STATE *vs.* MANUEL BARELLA.

DECEMBER 31, 1947.

PRESENT: Flynn, C. J., Capotosto and Condon, JJ.

FLYNN, C. J. The defendant in this case was indicted for committing an assault with a dangerous weapon upon the person of a state fish and game warden. He was convicted by a jury in the superior court in the county of Washington, and his motion for a new trial was subsequently denied by the trial justice. The case is here on the defendant's exceptions to that and other rulings made during the course of the trial.

The indictment, found by the grand jurors of the state of Rhode Island in and for the county of Washington,

charged that the defendant, on March 18, 1946, "with force and arms, at North Kingstown in the aforesaid county of Washington did assault one Arthur E. Burke with a dangerous weapon. Against the form of the statute in such case made and provided, and against the peace and dignity of the state."

The evidence showed unquestionably that the assault, if any, was committed by defendant on the waters of Narragansett bay south of a line between the mouth of the Pawtuxet river and Sabin's Point and about three quarters of a mile east of Pojack Point, the latter being land in the town of North Kingstown and in the county of Washington. The evidence for the state also showed that the defendant was a member of the crew on the fishing boat Popeye; that Arthur E. Burke, the complaining witness, was a senior warden of fish and game in the state of Rhode Island; that at the time of the assault he was in uniform cap and coat on board the state patrol boat Osprey; and that about 9:30 o'clock on the night of March 18, 1946 the state boat came upon several boats suspected of illegal shell fishing.

A command "heave to" was not obeyed, and the fishing boats moved away in different directions. The state boat put the spotlight on the Popeye, and the defendant was seen "shoveling stuff" off its further or starboard side. Then the state boat pulled alongside the Popeye's port quarter, and when the two boats were a couple of feet apart Burke was about to jump aboard. The defendant meanwhile had come across the deck of the Popeye to its port side and profanely warned Burke and the others not to come aboard. At the same time he raised a large shovel in the air and brought it down in the direction of Burke's head, narrowly missing the latter's face by an inch or two.

Thereupon the state boat was maneuvered sharply out of reach of the shovel, made a circle, and again came up alongside the Popeye. At this second approach Warden

Burke, with his revolver drawn, boarded the fishing boat and took the shovel from the defendant. As Burke then walked toward the captain of the Popeye, the defendant followed him and said: "I lost my head. I just got discharged from the Army a little while ago, and I lost my head". The warden replied: "If that shovel had hit me, I would have lost mine". The defendant then asked: "If you will give me a break", and the warden replied: "You will get no breaks from me".

The defendant apparently was later arraigned on a complaint of simple assault in the district court in the town of North Kingstown, where he admitted sufficient evidence to convict, was fined, and claimed an appeal. He voluntarily made certain admissions to the state police during their investigation and these were reduced to writing and read to the defendant, who then signed the statement. These admissions substantially corroborated certain parts of the evidence for the state but did not amount to a confession of guilt as to the commission of the assault. Subsequently, while the defendant's appeal from the charge of simple assault was still pending, he was indicted upon the present charge of assault with a dangerous weapon.

The evidence for the defendant admitted substantially the time and place of the alleged assault and the voluntary nature of his written statement of admissions, as introduced by a state police officer. He denied, however, that there was any attempted assault in fact. He admitted that he addressed profane remarks generally when the patrol boat first came alongside, as well as possession and use of the shovel; but he explained and demonstrated how he merely poked a couple of times at the patrol boat in order to keep it from striking the Popeye. He further stated that it was dark, the boats were moving, and he could not see Burke; that he was about three feet from the rail and the state boat was too far away at all times for him to reach it or Burke with the shovel, which was three and a half feet long; that he never swung the shovel in the

air or at Burke; never hit the patrol boat with it; and never admitted that he lost his head or asked the warden for a break. The evidence showed damage to the windshield of the patrol boat which resulted, according to witnesses for the state, from its being hit by the shovel when the defendant swung it at Burke.

The defendant's exceptions chiefly are argued in three groups: (1) To the denial of his motions to dismiss the indictment; to the refusal to give certain requests to charge; and to the charge as given; (2) to the denial of his motion for a directed verdict; and (3) to the denial of his motion for a new trial.

The defendant's contention, underlying the first group, is that the failure to charge in the indictment that the alleged assault was committed on the waters of Narragansett bay at a place to warrant prosecution in Washington county under the provisions of general laws 1938, chapter 625, §32, was a substantial and fatal defect, requiring the court to dismiss the indictment. In other words, he contends that "The venue is a jurisdictional fact and must always be proved by the state as a part of its case."

We agree that the venue in an indictment must be sufficiently stated and proved. However, we do not agree that the venue in the indictment here was fatally defective in view of the purpose and effect of G. L. 1938, chap. 625, §32. At common law, with the exception of a local offense wherein the place of commission was an essential element of the crime itself, it was not necessary to charge that the alleged crime was committed in any particular town or place. It was sufficient to state the venue in the county where the crime was alleged to have been committed. The assault here was not a local offense and hence the precise place of its commission was not an essential element of the crime itself. The statement therefore that the assault took place "at North Kingstown" may be considered as surplusage and immaterial.

On the other hand, the indictment laid the venue "in

the aforesaid county of Washington." The proof showed that the assault took place at a point outside the territorial boundaries of that county. At common law, without assistance from any statute, the defendant's contention would be persuasive. But here we have to consider also the intent and effect of G. L. 1938, chap. 625, §32. That statute reads as follows: "Every indictment for offenses committed on the waters of Narragansett bay not within the county of Providence, may be found and tried in any county in the discretion of the attorney-general."

The place where the assault was committed is not within the county of Providence as described in G. L. 1938, chap. 3, §6. By that section the waters north of a line from the mouth of the Pawtuxet river to Sabin's Point are deemed to be within the county of Providence for the purpose of prosecuting crimes committed thereon. Crimes committed on the waters of Narragansett bay south of that line may be prosecuted in any of the other counties in the discretion of the attorney general.

When these two statutes are considered together, the manifest intent and effect of chap. 625, §32, is to extend the lawful jurisdictional limits of the counties beyond their normal territorial boundaries for the purpose of prosecuting crimes committed on the waters of Narragansett bay. Upon that view the assault was committed within the jurisdictional limits of Washington county as contemplated by law. Therefore the charge in the indictment that the assault was committed "in the aforesaid county of Washington . . . . Against the form of the statute in such case made and provided" was sufficient to justify evidence that the assault took place on Narragansett bay off Pojack Point. Hence the defendant's motions to dismiss and his requests to charge were properly denied.

In support of these motions and requests on the ground of a defective statement of the venue the defendant cites *Commonwealth* v. *Matthews,* 167 Mass. 173, and *People* v. *Powell,* 353 Ill. 582. In our opinion the basic principle

there involved is the same as presented here but the cases do not support his contention in this respect. In *Commonwealth* v. *Matthews, supra,* the defendant was indicted for keeping a nuisance at Brockton, in Plymouth county, Massachusetts. The evidence showed that the defendant's tenement was located not at Brockton but in Easton, county of Bristol, and within one hundred rods of a boundary line between Plymouth and Bristol counties. The court denied a motion to quash, citing and approving the formula stated in the case of *Commonwealth* v. *Costley,* 118 Mass. 1, 25. In both of these cases there was a statute extending the jurisdictional limits of adjoining counties, for the purpose of prosecution, one hundred rods beyond the territorial boundaries. In the latter case, which involved a charge of murder in one county and proof of its commission in another, the court in denying a motion to quash said: "The manifest intent and effect of this enactment are that the boundary line between two counties, and a strip one hundred rods wide on each side of that line, may be treated, for the purposes of allegation, prosecution and punishment, as being in either county; or, in other words, that each county, for these purposes, may be deemed to extend one hundred rods into the county adjoining."

In *People* v. *Powell, supra,* the defendant was indicted for embezzlement under a special statute relating to fiduciaries. But by reason of the failure of the indictment to charge that the defendant was a trustee at the time of the alleged embezzlement and for the further reason "that the indictment in no count stated any venue", the court held that the indictment did not charge the defendant with the commission of a crime under such statute. That case is clearly distinguishable because here the crime itself does not depend on a statute and the indictment does state the venue as being in the county of Washington in this state.

We also have in mind the defendant's argument concerning a possible second prosecution for the same

offense because of the insufficient allegation in the indictment as to the place where the assault was committed. We apprehend no difficulty in the circumstances of this case because the undisputed evidence clearly identified the place of its commission on Narragansett bay. In the event that a second prosecution was attempted, such evidence would be admissible at a hearing upon an appropriate plea to determine the identity of the two crimes. For the principles governing a proceeding upon such a plea and its disposition before the merits of a plea of not guilty is to be heard on the alleged second offense, see *State* v. *Watson,* 20 R. I. 354; *State* v. *Pearson,* 49 R. I. 386.

Admittedly from a pleading viewpoint a suitable allegation as to the place on the waters of Narragansett bay where the crime was committed would have eliminated all questions and possible delays. Nevertheless, because of the legal effect to be given to chap. 625, §32, the allegation that the assault was committed "in the aforesaid county of Washington . . . . Against the form of the statute in such case made and provided" was sufficient to warrant the denial of defendant's motions to dismiss the indictment and the refusal of his requests to charge on this ground.

The defendant's second group of exceptions relate to the court's refusal to direct a verdict on the ground that there was a fatal variance between the proof and the charge in the indictment as to the place where the alleged crime was committed. From what has been said concerning the intent and effect of G. L. 1938, chap. 625, §32, we think that there was not such a variance *in contemplation of law* that the court was required to direct a verdict for the defendant. In our opinion the trial justice properly denied defendant's motion on the ground of variance.

The defendant under his third group of exceptions contends that the evidence did not sufficiently establish his guilt beyond a reasonable doubt. He argues that the trial justice failed to discuss in detail the credibility of

the witnesses and the weight of the testimony, and therefore his decision is not entitled to the usual weight. While the decision of the trial justice is brief, it leaves no doubt that he was passing his independent judgment on the evidence and that after considering all the evidence he came to the conclusion that the verdict of the jury was warranted.

■ The defendant, however, has stressed the necessity that in order to constitute an assault the state was required to prove that the weapon was presented at the party intended to be assaulted within the distance at which it may do execution, citing *State* v. *Baker,* 20 R. I. 275, and *State* v. *Hunt,* 25 R. I. 69. He argues strenuously that the defendant was not near enough, considering the darkness, the distance between the moving boats, the length of the shovel, and the other circumstances, to carry into execution any damage to Burke and therefore an assault was not and could not have been lawfully proved. But the jury had the right to believe and apparently did believe the evidence for the state to the effect that the spotlight showed plainly the positions of defendant and Burke, and that they were close enough, considering the means employed by defendant and the other circumstances, to cause Burke to be put in fear of bodily harm by the defendant's deliberate swinging of the shovel at his head. It would not be necessary in such circumstances to establish also that there was an actual battery in order to prove that the defendant was close enough to commit an assault.

In our opinion there were material factual issues for the jury to determine upon conflicting evidence. When all the evidence is weighed, if the witnesses and evidence for the state are believed, we cannot say that the jury were not warranted in concluding that the defendant was guilty beyond a reasonable doubt of the assault as charged in the indictment.

The other exceptions of defendant that were briefed or

argued have been considered and found to be without merit.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*John H. Nolan,* Attorney General, *A. Norman LaSalle,* Assistant Attorney General, for State.

*John C. Burke,* for defendant.