319 A.2d 651.

MARIO NARDOLILLO AND RAYMOND NARDOLILLO, *p.p.a.*
*vs.* WARD FOODS, INC.

MAY 28, 1974.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This negligence action involves a collison between a 1968 Chevrolet Sedan and a 1961 GMC Truck. A Superior Court jury returned a verdict for the defendant truck owner. The plaintiffs filed no motion for a new trial. Their appeal is limited to the trial justice's reference, when giving his charge, to certain statutes which are the automotive rules of the road.

On the rainy morning (7:45 a.m.) of June 28, 1968, Raymond Nardolillo was driving his father's automobile

in an easterly direction on Ledge Street in the city of Providence. His father was a front seat passenger. The defendant's driver was operating the truck in a southerly direction on Silver Spring Street. Silver Spring and Ledge Streets meet and form a "T" as illustrated below:

Silver Spring Street

The vehicles collided and this suit ensued. The father seeks compensation for property damage, personal injuries, and the medical expenses incurred in the treatment of his son's injuries. The son seeks damages for his injuries and a loss of income.

The only record before us is Raymond's testimony. He told the jury that when he reached the westerly curbline of Silver Spring Street, he stopped the sedan. There is no traffic control sign regulating the flow of the eastbound traffic. Raymond first looked to his left to the top of a rise in the slope of Silver Spring Street and saw no southbound traffic. He then looked to his right. Since he saw no vehicles approaching from either direction, Raymond drove out onto Silver Spring Street and when he reached the center of the highway, he saw defendant's truck some 25 feet to his left. The truck's left-front fender struck the left-rear quarter of the Nardolillo automobile. Raymond told the jury that the top of the rise was 125 to 150 feet to his left. He estimated the truck's speed at approximately 30 miles per hour.

During cross-examination, Raymond stated that he had traveled the Ledge Street-Silver Spring Street intersection

many times. He agreed that Silver Spring Street was a "heavily traveled" street and that a driver approaching the intersection from Ledge Street has an unobstructed view of southbound traffic. Raymond said that he waited at this intersection for a period of 15 to 20 seconds before driving onto Silver Spring Street. He did not recall if he took a second look to his left before he started to make his left-hand turn. He said that at the time of impact the front of the Chevrolet was across the midline of the highway facing the northeast at a 45-degree angle. Raymond conceded that the truck had traveled a distance of over 100 feet past the rise before he saw it. He stated that it was raining hard and that the precipitation blocked the view from the window on the driver's side.

At oral argument defendant emphasized that its driver told the jury a different story. The defendant's reply to plaintiffs' interrogatories contained its driver's affidavit in which he gives the truck's speed as it proceeded along Silver Spring Street at 17 miles per hour, but as having decreased to 5 miles per hour just before the collision. It also indicates that at the scene of the collision, the driver asked Raymond "why he pulled out the way he did."

During his charge, the trial justice explained that in order to recover any damages, the Nardolillos had the burden of proving the truck driver's negligence and Raymond's freedom from contributory negligence. The trial justice told the jury that in determining either driver's negligence they should consider all the pertinent circumstances such as weather, visibility, the roads, whether one was a principal road and the other a subsidiary, and then determine what a "reasonable careful person" would have done or would not have done. After this admonition, the trial justice informed the jury that if it found that one of the drivers had violated a rule of the road, such a violation could be taken into consideration along with other factors

in determining whether he was negligent. He then went on to read five different rules of the road.

The trial justice first read G. L. 1956 (1968 Reenactment) §31-16-1. In essence, it states that no person shall start a stopped, standing or parked vehicle "unless and until such movement can be made with reasonable safety." Next, he alluded to §31-16-5 and stated that " '[n]o person shall turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.' "[1]

The trial justice finished this portion of the charge by reading §§31-16-2(b),[2] 31-17-2,[3] and 31-17-3.[4]

At the conclusion of the charge, plaintiffs objected to the use of the first three rules enunciated therein. They argued that the stopped, standing or parked vehicle rule is applicable only to an incident when a driver drives a parked car away from the curb. The turning on a private roadway proviso, they claimed, is referable only to those vehicles on a private road, not those on the public highway. Finally, they argued that the left-hand turn in the

[1] The language quoted is but a portion of the statute because this rule also speaks of a driver making sure that his vehicle is in proper position on the roadway before turning into an intersection. It also requires a driver to give an appropriate signal when turning.

[2] This rule describes the proper manner of making a left-hand turn at an intersection where the traffic on both highways is moving in both directions.

[3] This rule stipulates that a driver who is within the intersection and intending to make a left-hand turn must yield the right-of-way to oncoming traffic that is in the intersection or so close thereto as to constitute an "immediate hazard."

[4] A driver entering a "through highway" is required by this rule to yield the right-of-way to traffic within the intersection or in such close proximity that it also constitutes an "immediate hazard."

face of oncoming traffic rule is not applicable to turns made at a "T" intersection because there was no two-way traffic on Ledge Street.

The trial justice agreed that the left-hand turn into approaching traffic rule was not applicable to a "T" type intersection and so told the jury. He would not, however, modify his instruction in any other regard.

We shall assume that plaintiffs are correct as to their interpretation of the rules relating to stopped, parked or standing vehicles and the driving of a vehicle on a private road, but we can perceive no reversible error. We have on many occasions ruled that absent some peculiar circumstances we shall not lift an imprecise portion of a charge out of context in order to determine whether or not its effect was prejudicial. To the contrary, we will consider that question in the light of the entire charge. *Pate* v. *Sutton*, 107 R. I. 632, 269 A.2d 788 (1970); *Handy* v. *Geary*, 105 R. I. 419, 252 A.2d 435 (1969); *Oddo* v. *Cardi*, 100 R. I. 578, 218 A.2d 373 (1966). As stated earlier, a vital issue in the case at bar was whether Raymond's failure to observe the southeast travel of defendant's truck until it was just 25 feet away from him was the action of a "reasonably careful person." Or, to put it another way, was Raymond acting with "reasonable safety" when he started across the roadway in a sedan whose side window visibility had been at best substantially reduced by the day's atmospheric conditions? Even though we cannot give an enthusiastic endorsement to a reading of a series of the so-called rules of the road without any effort to relate them to the facts of the controversy, we see no prejudicial error. In the context of this case the phrases "reasonably careful person" and "until such movement can be made with reasonable safety" conveyed the same idea. The plaintiffs were bound to prove that Raymond acted reasonably when he began to cross Silver Spring

Street and head north. We are convinced that the recitation of §§31-16-1 and 5 in no way distracted the jury from properly assessing the driving techniques of either Raymond or defendant's driver. The jury's finding for defendant could well have been based on its conclusion that defendant was not negligent or that some act of Raymond constituted the negligence which contributed to the collision.

Before us, the plaintiffs fault the trial justice for his reference to the rule requiring the yielding of the right-of-way when entering a through highway because a through highway is by definition[5] a road the entry to which is regulated by either a stop sign or a yield sign. The only difficulty with this particular phase of their argument is its tardiness. Objection to the charge cannot be raised for the first time on appeal. *Carraturo* v. *Lawrence,* 107 R. I. 463, 268 A.2d 277 (1970).

The plaintiffs' appeal is denied and dismissed.

---

[5]The motor vehicle code defines a through highway as a highway to which entry thereon is controlled by a stop sign. General Laws 1956 (1968 Reenactment) §31-1-23. Later, a through highway is described as a highway the entry to which is controlled by either a stop sign or a yield sign. Section 31-20-6.