STATE

v.

**Richard ASHNESS and Christopher Cole.**

**No. 81–332–C.A.**

Supreme Court of Rhode Island.

June 8, 1983.

Dennis J. Roberts II, Atty. Gen., Margaret R. Levy, Sp. Asst. Atty. Gen., Providence, for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Chief Appellate Counsel, Providence, Bruce G. Pollock, Warwick, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

The defendants Richard Ashness and Christopher Cole were charged in a multicount indictment with a series of offenses arising from an armed robbery of a jewelry store. A Superior Court jury found both the defendants guilty of one count of robbery, eight counts of assault with a dangerous weapon, and one count of committing a crime of violence while armed. The trial justice denied the defendants' motions for a new trial, and they appealed.

On the evening of October 25, 1979, two men carrying guns and wearing ski masks robbed Cerel's Jewelry Store in Pawtucket, Rhode Island. Several employees and customers were present at the time. One of the men, described as tall and slender, positioned himself at a counter near the front of the store and ordered Daniel Cerel, co-owner of the store, to put diamonds from the display case into a bag. The man fired one shot through the front of the case but neither Mr. Cerel nor the customers he had been waiting on were injured. Meanwhile, the shorter of the two robbers, brandishing his gun, accosted employees and customers in the rear of the store. He fired in the direction of an employee emerging from the

vault and then fired two shots past the head of David Bradley, another employee, after ordering him to turn over the jewelry in the case in front of him. No injuries were sustained either by Mr. Bradley or by the two customers standing nearby, Gerry Jones and his fiancee. As the two men fled with approximately $100,000 in jewelry, an employee activated a silent alarm.

A police officer gave chase to a blue Mercury with two occupants which had run a stop sign with its headlights off approximately one block from Cerel's. The driver of the vehicle began firing his gun out the window in the direction of the pursuing police car. While the Mercury was being pursued, a report of the robbery at Cerel's Jewelry Store came over the police radio. The Mercury entered a municipal parking lot where the two occupants jumped from the Mercury and ran to a silver-gray Malibu parked in the lot. The pursuing police officer fired a shot, and the passenger, wearing a ski mask, fell to the ground. This suspect was later identified as defendant Christopher Cole. The police discovered trays of jewelry in the Mercury and found two guns in the parking lot.

In response to the broadcast by the officer in the parking lot, a second officer moved his vehicle to block the path of the Malibu driving away from the lot. The driver evaded the second police vehicle, but a third police car moved into his path. The police apprehended the driver when he attempted to drive through a gas station. The driver of the Malibu was subsequently identified as defendant Richard Ashness.

On appeal defendants allege several errors in the trial justice's rulings. In order to give proper attention to the issues presented, we will consider each defendant's arguments separately.

## I

### A

The first issue raised by defendant Ashness is whether the trial justice abused his discretion in denying defendant's motion for a continuance. Ashness sought a continuance to allow him time to secure counsel of his choice to represent him.

The Public Defender originally assigned Ms. Allegra Munson to represent defendant Ashness. Approximately six weeks before the case came to trial, the Public Defender transferred the case to Mr. Marvin Clemons. On the first day of trial, defendant Ashness addressed the court and for the first time expressed his dissatisfaction with his present attorney. He requested either the return of Ms. Munson or time to retain private counsel.[1]

The trial justice denied defendant's motion to continue. He noted that the case was ready to be heard and numerous witnesses had been notified to be present. He also recognized the right of the Public Defender to reassign cases and the adequacy of representation in this case. The defendant contends that this ruling denies him his constitutional right to counsel because the court did not give him the opportunity to obtain counsel of his choice. We disagree.

Due process requires that a defendant be afforded a reasonable opportunity to obtain counsel of his choice. *Chandler v. Fretag*, 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4, 10 (1954); *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1213–14 (3d Cir.1969); *State v. Dias*, 118 R.I. 499, 502, 374 A.2d 1028, 1029 (1977). However, not every denial of a request for a continuance violates due process. *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931 (1964); *State v. Dias*, 118 R.I. at 503, 374 A.2d at 1030. The general rule is that the question of a continuance is a matter within the sound discretion of the trial justice. *State v. Levitt*, 118 R.I. 32, 41, 371 A.2d 596, 601 (1977). In arriving at his decision, the trial justice must weigh the

---

1. Ashness told the court that his family was willing to assist him in retaining private counsel.

interest of the defendant in securing counsel of his choice against the interest of the public in an efficient and effective judicial system. *United States ex rel. Carey v. Rundle,* 409 F.2d at 1214. Whether the denial of a continuance is so arbitrary as to constitute a violation of due process depends upon the particular circumstances of each case and the reason asserted for the request. *Ungar v. Sarafite,* 376 U.S. at 589, 84 S.Ct. at 850, 11 L.Ed.2d at 931; *State v. Dias,* 118 R.I. at 503, 374 A.2d at 1030.

■ Even assuming that defendant Ashness did not seek to delay the trial by requesting time to obtain private counsel,[2] the facts of this case clearly support the denial of the continuance. The defendant had ample time after Mr. Clemons was assigned to his case to secure private counsel and to make the court aware of his dissatisfaction with Mr. Clemons. Instead, defendant Ashness waited until the start of the trial to inform the court and request a continuance. The case was already set for a jury trial to begin within a day or two, and the state had fifteen or sixteen witnesses ready to testify. At this point, the necessity for the efficient and effective administration of criminal justice outweighed defendant's interest in securing counsel of his choice.[3]

In light of the facts and circumstances of this case, the trial justice properly exercised his discretion in denying defendant Ashness's motion for a continuance.

**B**

Ashness's second contention is that the trial justice abused his discretion in refusing to declare police-detective Herbert Collins a hostile witness. Detective Collins was the primary investigating officer of this case. He conducted a tangible-evidence viewing for counsel at which he allegedly identified certain articles of clothing as those seized from defendant Ashness at the time of his arrest. Defense counsel called Detective Collins as a witness to identify the clothing in court as that seized from Ashness. By this testimony, defendant sought to demonstrate that the clothing Ashness was wearing at the time of his arrest did not match the color of the robber's clothing described by certain witnesses.[4] Defense counsel was unable to elicit from Detective Collins a statement that the clothes were in fact taken from Ashness, and the trial justice sustained the state's objections to counsel's repeated use of leading questions. Defense counsel then requested that the court declare the detective a hostile witness so that he could be cross-examined. The trial justice denied the request on the basis that the witness's answers had not been evasive.

Ashness contends that the trial justice's ruling on this request was an abuse of discretion because he failed to recognize the rule adopted by some courts that a witness

**2.** In *State v. Monteiro,* 108 R.I. 569, 277 A.2d 739 (1971), this court found that the defendant's motion for a continuance to allow time to secure new counsel was merely a delay tactic and therefore the trial justice properly denied the motion.

**3.** The defendant cites our decision in *State v. Dias,* 118 R.I. 499, 374 A.2d 1028 (1977), as support for his position. The circumstances of *Dias* are significantly different from the facts of this case. *Dias* involved a probation violation hearing with no jury and four witnesses, including two police officers and one state employee. The defendant in *Dias* was being held without bail while his family made efforts to obtain private counsel. Private counsel in fact contacted the clerk's office, examined the papers, and informed the clerk he would not be available the day of the hearing. The time

between Dias's arraignment and the date of the hearing was merely two weeks. Relying on these facts, this court concluded that the trial justice abused his discretion in denying Dias's request for a continuance.

**4.** Police arrested Ashness at the end of a chase that began minutes after the robbery at a location approximately a city block from the scene. There was no possibility that defendant could have changed his clothes between the time of the robbery and his arrest.

Those witnesses who were able to give descriptions stated that the taller robber, allegedly defendant Ashness, wore blue clothing. The clothing allegedly taken from Ashness consisted of brown cotton gloves, a green T-shirt, and a white vest.

closely associated with an adverse party may be declared hostile regardless of whether or not his answers are evasive. *See United States v. Bryant,* 461 F.2d 912 (6th Cir.1972); *United States v. Freeman,* 302 F.2d 347 (2d Cir.1962), *cert. denied,* 375 U.S. 958, 84 S.Ct. 448, 11 L.Ed.2d 316 (1963). The defendant's claim is misplaced.

■■■ Under Rhode Island law, counsel may impeach his own witness in two situations: when he is surprised by the witness's testimony or when the interests of justice so require. *State v. Vargas,* R.I., 420 A.2d 809, 812 (1980); *State v. Robertson,* 102 R.I. 623, 626–29, 232 A.2d 781, 784–85 (1967). Defense counsel may have been surprised when Detective Collins initially denied having seen the clothing before that morning in court, but the detective did subsequently recall his presence at the tangible-evidence viewing.[5] The identification of the clothing as that taken from Ashness, however, was not information within Detective Collins's personal knowledge. There was no evidence that the detective was present at Ashness's arrest or that he saw him at the police station immediately afterwards. Therefore, Detective Collins's identification of the clothing as belonging to Ashness in order to prove that he was wearing that clothing at the time of the robbery would be objectionable as constituting hearsay. Defense counsel could have elicited this testimony from other witnesses having personal knowledge of the information. Clearly, the interests of justice should not require the impeachment of defendant's witness under these circumstances.

In view of established Rhode Island law, the trial justice did not abuse his discretion in denying defendant Ashness's request to declare Detective Collins a hostile witness.

C

Ashness next argues that the trial justice erred in refusing to dismiss count 5 of the indictment on either his motion for judgment of acquittal or his motion for a new trial. Count 5 charged defendant with assault with a dangerous weapon on the customer Gerry Jones. The defendant asserts that the gun was never presented to Mr. Jones nor was Mr. Jones placed in fear and that consequently, there was insufficient evidence to establish the elements of assault with a dangerous weapon.

■■ This court defined an assault in *State v. Baker,* 20 R.I. 275, 277, 38 A. 653, 654 (1897), as an "unlawful attempt or offer, with force or violence, to do a corporal hurt to another * * *. The offence may consist, also, in putting another in fear of violence." In *Baker,* we also propounded the requirement that "[t]o constitute an assault with a dangerous weapon it is necessary that the weapon should be presented at the party intended to be assaulted, within the distance at which it may do execution." *Id.* at 278, 38 A. at 654; *accord, State v. Barella,* 73 R.I. 367, 375, 56 A.2d 185, 188–89 (1947). In *State v. Milazzo,* 116 R.I. 443, 447, 358 A.2d 35, 37 (1976), we reaffirmed the ruling that the actual present ability of the defendant to inflict harm on the victim by using a dangerous weapon is an element of the offense of assault with a dangerous weapon.

The evidence shows that Mr. Jones was standing approximately five feet away from the gunman when he fired two shots in the direction of Mr. Bradley. Although the gunman did not point the gun at Mr. Jones or address him directly, Mr. Jones was clearly within range of the weapon.

**5.** Initially Detective Collins testified that he had never seen the clothing in question before that morning. Defense counsel then requested that the court declare him a hostile witness, which the trial justice refused to do. Counsel then requested the court to ask the detective whether he spoke with counsel when he viewed the tangible evidence at the police station. The court reaffirmed its refusal to declare Detective Collins a hostile witness and pointed out that the question about whether or not the detective had seen the clothes before was a collateral issue on which impeachment is not allowed. Detective Collins subsequently stated that he had seen the clothing before at the police station, but defense counsel was unable to elicit testimony regarding statements he made to counsel at that time.

There was also evidence from which a factfinder might infer that Gerry Jones was put in fear. He testified that when he realized a robbery was in progress, he did not want to pull his hands out of his pockets because he "didn't know what would happen." The defendant relies on Mr. Jones's statement that his fear was "mostly" for his fiancee, who was standing next to him. This statement, however, does not indicate that Mr. Jones was not at all frightened for himself.

Our review of the evidence indicates that there was sufficient evidence to support a conclusion that the gunman had the actual present ability to inflict bodily harm on Mr. Jones. Therefore, the trial justice's denial of both the motion for a judgment of acquittal and a new trial in regard to count 5 was not error.

### D

We now turn to defendant Ashness's fourth assignment of error. Ashness asserts that the trial justice erred in not dismissing the charge of committing a crime of violence while armed[6] because it constitutes double jeopardy when combined with either the robbery charge[7] or the assault-with-a-dangerous-weapon counts.[8]

The state contends that there is no double-jeopardy violation because the indictment states that the underlying crime of violence is the robbery[9] and there is an additional element to the proof of robbery which is not an element of the proof of commission of a crime of violence while armed.[10] The trial justice accepted the state's argument and found no double jeopardy. We disagree.

The reliance on the wording of the indictment by the state and the trial justice is misplaced. The facts of this case show that two crimes of violence—robbery and assault with a dangerous weapon—were committed at the same time as part of the same criminal transaction. Under these circumstances, the state should not be permitted to single out that crime of violence which will evade a double-jeopardy challenge, thereby securing an additional conviction based upon the same evidence. Therefore, if the combination of the crime-of-violence charge with either the robbery or the assault-with-a-dangerous-weapon

---

6. General Laws 1956 (1981 Reenactment) § 11–47–3 provides that

"[n]o person shall commit or attempt to commit a crime of violence when armed with or having available any firearm * * *."

A "crime of violence" includes

"any of the following crimes or an attempt to commit any of the same, viz.; murder, manslaughter, rape, mayhem, robbery, burglary, breaking and entering, assault with a dangerous weapon, assault or battery involving grave bodily injury, and/or assault with intent to commit any offense punishable as a felony." Section 11–47–2.

7. Rhode Island has adopted the common-law definition of robbery, which is " 'the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence, or putting him in fear.' " State v. Domanski, 57 R.I. 500, 501, 190 A. 854, 855 (1937); accord, State v. Robalewski, R.I., 418 A.2d 817, 820–21 (1980).

8. This court has defined an assault as an "unlawful attempt or offer, with force or violence, to do a corporal hurt to another * * *. The

offence may consist, also, in putting another in fear of violence." State v. Baker, 20 R.I. 275, 277, 38 A. 653, 654 (1897). Additionally, to constitute an assault with a dangerous weapon, the defendant must have the actual present ability to inflict harm on the victim by using a dangerous weapon. Id. at 278, 38 A. at 654; accord, State v. Milazzo, 116 R.I. 443, 447, 358 A.2d 35, 37 (1976); State v. Barella, 73 R.I. 367, 375, 56 A.2d 185, 188–89 (1947).

9. Count 13 of the indictment stated:

"That, Richard Alfred Thomas Ashness * * * and Christopher D. Cole * * * did commit a crime of violence, to wit, robbery, when armed with and having available a firearm, to wit, a pistol, in violation of § 11–47–3 of the General Laws of Rhode Island, 1956, as amended, (Reenactment of 1969)."

10. The state contends that conviction for robbery only requires proof of a taking against the will of another whereas the commission of a crime of violence while armed requires proof that the robbery was perpetrated with a firearm. Proof of the use of a firearm allegedly constitutes the additional element.

counts constitutes double jeopardy, then it must be dismissed.

The issue so presented has already been passed upon. In *State v. Boudreau,* 113 R.I. 497, 322 A.2d 626 (1974), we held that a defendant charged with assault with a dangerous weapon and commission of a crime of violence while armed was twice placed in jeopardy in violation of the prohibition against double jeopardy embodied in the Fifth and Fourteenth Amendments of the United States Constitution and article I, section 7, of the Rhode Island Constitution. *Id.* at 502–03, 322 A.2d at 629. This holding was applied to the same circumstances in *State v. Grullon,* 117 R.I. 682, 686–88, 371 A.2d 265, 267–68 (1977), in which the charges of assault with a dangerous weapon and commission of a crime of violence while armed were both based upon the same conduct of the defendant.

▪ The reasoning of *Boudreau* and *Grullon* clearly applies to the circumstances of this case. Therefore, either the crime-of-violence count or the assault-with-a-dangerous-weapon count must be dismissed.[11]

In *Boudreau* we considered the question of what type of relief is appropriate after a finding of double jeopardy when more than one sentence has been imposed. *See State v. Boudreau,* 113 R.I. at 504–05, 322 A.2d at 630. The trial justice in that case had imposed concurrent sentences for the two offenses that constituted the double-jeopardy violation. *Id.* at 504, 322 A.2d at 630. We concluded that the defendant had not suffered any prejudice by the imposition of the two concurrent sentences and that it was therefore appropriate to order reversal on one count and affirm the other conviction rather than remand the case to the trial justice. *Id.*

The reasoning employed in *Boudreau* is clearly applicable to the case before the court. Ashness received a ten-year sentence on the charge of committing a crime of violence while armed and ten-year sentences for conviction on each of seven counts of assault with a dangerous weapon, all of the sentences to be served concurrently. Clearly, defendant will not be prejudiced by reversal of one count and affirmance of the others because the time he must serve for these offenses will remain the same.

## E

The fifth issue raised by defendant Ashness concerns the trial justice's adverse ruling on defendant's motion to sequester all of the witnesses. The defendant moved to sequester the witnesses at the beginning of the trial and again after several witnesses had testified. In support of his motion, defendant argued that sequestration was necessary to prevent witnesses from being influenced by the testimony of others regarding the details of what had occurred in the jewelry store and during the chase that had ended in the arrest of defendants. The trial justice denied the motion at the start of the trial, stating that there was no support for defendant's contention and there-

---

11. In supplemental briefs, both the state and defendants have raised the question of whether the United States Supreme Court's decision in *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) is applicable to this case. In *Missouri v. Hunter,* the defendant was convicted in a single trial of both "armed criminal action" and first-degree robbery. The United States Supreme Court found that although the statutes proscribe the "same" conduct under the *Blockburger* test, the Missouri Legislature specifically authorized cumulative punishment under the two statutes and therefore prohibition against double jeopardy did not apply. *Missouri v. Hunter,* —— U.S. at ——, 103 S.Ct. at 679, 74 L.Ed.2d at 543; *see* Mo.Ann.Stat. § 559.225 (Vernon 1979) (providing that any person committing a felony with a dangerous or deadly weapon "is also guilty of the crime of armed criminal action" and punishment under this section "shall be in addition to any punishment provided by law for the crime committed * * *"). We find this decision inapplicable to the case at bar because, after examining the language of § 11–47–3, prohibiting the commission of a crime of violence while armed, we conclude that the Rhode Island Legislature did not intend thereby to authorize cumulative punishment under two statutes for actions constituting the "same" conduct under the *Blockburger* test.

fore no reason to sequester. Upon renewal of the motion by defendant, the trial justice affirmed his prior ruling on the basis that the adoption of testimony by witnesses was too remote a possibility and that the testimony thus far did not indicate that witnesses were influenced by others' testimony. We find no reason to disturb the trial justice's decision.

■ The decision whether to sequester witnesses during a criminal trial is a matter within the sound discretion of the trial justice. The Supreme Court will not disturb his decision on review absent a clear showing of abuse of discretion. *State v. Raposa,* 100 R.I. 516, 517, 217 A.2d 469, 470 (1966); *State v. Cyrulik,* 100 R.I. 282, 284, 214 A.2d 382, 383–84 (1965).

■ A review of the record in no way indicates that witnesses altered their testimony as a result of their being present while other witnesses were on the stand. The circumstances of this case were not exceptional to the extent that the witnesses' adoption of another's testimony was anything more than a remote possibility. Consequently, the trial justice did not abuse his discretion in denying defendant's motion to sequester the witnesses because defendant failed to make an affirmative showing that prejudice would result without sequestration.

### F

Ashness next asserts that the trial justice committed prejudicial error when he instructed the jury that a reasonable doubt is an "actual, substantial doubt." Assuming that this question is properly before this court,[12] defendant's contention is without merit.

■ The defendant's argument is based on our decision in *State v. Thorpe,* R.I., 429 A.2d 785, 790 n. 4 (1981), in which we ad-

monished trial justices to omit any reference to "substantial doubt" in their instructions on the reasonable-doubt doctrine. The trial in the instant case preceded the issuance of the *Thorpe* decision and, as we stated in *State v. Ballard,* R.I., 439 A.2d 1375, 1387 (1982), when confronted with this identical issue,

> "[w]e cannot fault the trial justice for instructing the jury on the law as it existed at that time."

The trial justice properly instructed the jury according to the law as it existed at the time of the trial, and therefore, he cannot now be held in error.

### G

Ashness also alleges that the trial justice erred in denying his motion to sever his trial from that of defendant Christopher Cole. Cole also moved for severance of his trial, and the trial justice denied his motion as well. The defendants asserted several reasons to support their motions: jurors may associate evidence presented against one defendant with the other defendant as well; if one defendant testifies, he may attempt to discredit the other; if one defendant testifies and the other does not, the jury may draw a negative inference; defendants were arrested at different times and locations and under different circumstances.

The trial justice considered each of these contentions and found that such problems were inherent in any joint trial, and in this case the prejudice to defendants of conducting a joint trial did not outweigh the inconvenience of holding two separate trials. We agree with this ruling.

■ The well-settled rule is that severance is not a matter of right but rather is an issue directed to the sound discretion of the trial justice. *State v. Gibbons,* R.I., 418 A.2d 830, 834–35 (1980); *State v. Patriarca,*

---

12. The defendant admits in his brief that no objection was made to this portion of the trial justice's charge. This court adheres to the general rule that an objection to the trial justice's charge cannot be raised for the first time on

appeal. *See Young v. Park,* R.I., 417 A.2d 889, 895 (1980), *cert. denied,* 449 U.S. 1119, 101 S.Ct. 933, 67 L.Ed.2d 106 (1981); *Nardolillo v. Ward Foods, Inc.,* 113 R.I. 255, 260, 319 A.2d 651, 655 (1974).

112 R.I. 14, 28, 308 A.2d 300, 310 (1973). The trial justice's denial of the motion to sever will not be reversed on review unless there has been a clear abuse of discretion. *Id.* The defendant must affirmatively show that in fact he has suffered prejudice as a result of the joint trial to the extent that it has impinged upon his right to a fair trial. *State v. Gibbons,* R.I., 418 A.2d at 835; *State v. Patriarca,* 112 R.I. at 28, 308 A.2d at 310. Mere allegations of potential prejudice are not sufficient. The defendant must support his motion with more than a showing of disadvantage.

 The defendants in the instant case have not sustained their burden on this motion. Neither defendant took the stand, and a cautionary instruction by the trial justice took care of the potential problem of the jury's using evidence presented against one defendant to determine the guilt of the other. The arrests of defendants occurred only minutes apart and were not significantly different. The inconvenience to the witnesses and the interests of efficient judicial administration far outweigh the mere possibility of prejudice alleged by defendants.

In light of the lack of an affirmative showing of prejudice by defendants, the trial justice did not abuse his discretion in denying defendants' motions to sever their trials.

### H

Ashness's next assignment of error concerns the testimony of a prosecution witness in regard to conclusions drawn from the results of tests he performed on several weapons, shell casings, and spent projectiles found at the scenes of both the incident and the arrests. The defendant made a motion to strike all of the witness's testimony after the witness stepped down, arguing that the witness was never declared an expert by the court nor was he properly presented as an expert witness. Alternatively, Ashness contends that even if the witness was properly offered as an expert, he was not adequately qualified to render the opinions he did and that therefore the weapons, casings, and spent projectiles were improperly admitted as full exhibits. We find no merit in these arguments.

A brief review of the sequence of events regarding this particular witness's testimony is helpful. The prosecution called the witness apparently for the purpose of testifying as a firearms-identification expert to identify the shell casings and spent projectiles found at the scenes of the crime and the arrests as being shot from the weapons discovered in the parking lot and on defendants' persons. The witness began his testimony with a recitation of his education, training, employment, and prior experience testifying as an expert in this field.[13] He then proceeded to describe the tests used to determine whether certain casings and projectiles could have been expelled from a particular gun. In response to counsel's inquiries, the witness then identified two firearms and, relying on the tests performed, concluded that certain casings found at the scene had been expelled from one of them. Counsel next produced certain cartridges seized at the scene. The witness had not examined these items previously but identified the cartridges as the type used in one of the seized weapons and one item as the remains of a spent projectile. Defense counsel objected to the entire line of questioning regarding identification of the cartridges, but the trial justice allowed the witness to respond.

After the witness stepped down, counsel for defendants moved to strike all of the witness's testimony on the grounds that he was neither called nor offered as an expert, nor was he qualified to give opinions on these matters. Defense counsel also

---

**13.** The witness testified that he had a bachelor of science degree and a doctorate in chemistry from the University of Rhode Island. Since he received his degrees nine years ago, he has been employed by the Laboratory for Scientific Criminal Investigation at the University of Rhode Island as a senior criminalist in the area of firearms. He stated that he had testified as an expert on firearms identification approximately three dozen times.

claimed that they did not have notice of the witness's testimony regarding the cartridge fragments. The trial justice ruled that the motion to strike was untimely. He reasoned that any objection to a witness's qualifications as well as a protest of lack of notice should be the subject of a specific request for a conference at the side bar. Therefore, the trial justice denied the motion to strike.

The trial justice's reasoning is sound. Generally, a motion to strike must be made contemporaneously with the admission of the evidence to which it is directed and is inappropriate when no objection is made to the questions that elicit the allegedly inadmissible testimony. *Cooper v. Housing Authority of Newport,* 105 R.I. 126, 131, 249 A.2d 904, 907 (1969). Because defendants failed to interpose any objection until the last part of the witness's testimony, a motion to strike all of his testimony was inappropriate and untimely. A challenge to the witness's qualifications should have been made at the beginning of his testimony.

Even assuming that the motion to strike was not untimely, the trial justice properly denied it. It is well settled in this jurisdiction that the qualification of an expert witness and the matters to which he may testify are considerations within the sound discretion of the trial justice, and his ruling will not be disturbed on review absent a clear showing of abuse. *State v. Capalbo,* R.I., 433 A.2d 242, 246 (1981); *Rossilli v. Iacovelli,* 88 R.I. 456, 459, 149 A.2d 709, 711 (1959). A review of the record reveals that the witness's qualifications were sufficient to refute any allegation of abuse of discretion in allowing him to render expert opinions. Therefore, the lack of a formal tender of the witness as an expert and a specific ruling thereon before treating him as an expert and allowing him to testify as such did not constitute prejudicial error.

I

The final contention of defendant Ashness encompasses three alleged errors committed by the trial justice in regard to the relative heights of defendants: (1) requesting defendants to stand before the jury, (2) stating for the record which defendant was the taller and which was the shorter, and (3) denying defendants' motion to pass the case because of a remark by the prosecutor. We shall consider each argument in order.

1

At one point in the trial, during direct examination of a prosecution witness, counsel requested through the court that the two defendants stand up. Over defense counsels' objections the court complied with the request. The purpose of the request was to allow the witness to comment on the height differential of defendants as compared with the height differential of the robbers. Testimony had been elicited from this witness and others that one robber was noticeably shorter than the other. Ashness contends that the trial justice abused his discretion in requiring defendants to stand in this manner. We disagree.

The United States Supreme Court decision in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and the line of cases following it, controls our decision on this matter. These cases have upheld the principle that

"a man is not protected by constitutional privilege from being compelled to stand up, sit down, walk, speak or submit to photography or fingerprinting so long as these disclose nothing about his knowledge." *Hill v. United States,* 367 A.2d 110, 116 (D.C.1976).

In this case, the stand-up was not testimonial in nature and therefore did not implicate the constitutional protection against self-incrimination. Additionally there was no violation of due-process standards because the activity and the atmosphere were not unnecessarily suggestive. Consequently, we find no abuse of discretion on the part of the trial justice in requesting defendants to stand momentarily.

2

■ Ashness next contends that the trial justice erred when, at the prosecution's request, he stated for the record that Ashness was the taller of the two defendants and Cole was the shorter. The defendant asserts that the trial justice thereby introduced a fact not in evidence and invaded the province of the jury. This argument is without merit.

Although no evidence had as yet been introduced regarding defendants' actual respective heights, the trial justice's statement was discretionary and not improper under the circumstances. The relative heights of defendants were already obvious to the jury because they had stood previously during at least one witness's testimony for the purpose of assessing their height differential [14] and they also stood each day as the trial justice entered and left. The reference to their identities, explained the trial justice, was taken from information obtained at their arraignment when the entire jury panel was present. The trial justice, in making the statement, was merely noting a self-evident observation.

In light of the circumstances and context of the comment, the trial justice did not abuse his discretion in stating for the record the relative heights of defendants.

3

The final contention of defendant Ashness is that the trial justice abused his discretion in denying defendant's motion to pass, which was based on improper conduct by the prosecutor which allegedly resulted in prejudice.

As the court recessed one day, defendant Ashness stood as the trial justice left the bench and then sat down as the jurors began to leave the box. At this time, the prosecutor made a comment either to defendant or to the police detective standing next to him regarding defendant's actions, to which defendant loudly responded that he had stood up. It is unclear whether any of the jurors heard the prosecutor's remark, but it is likely that they did hear defendant's rejoinder. The defendant claims that as a result of these remarks the jury was left with the impression that defendant was attempting to conceal his height.

The trial justice denied the motion to pass after agreeing that nothing should be done that would lead the jury to infer that defendants were trying to conceal their height difference and cautioning counsel to guard his language in the presence of the jury. He concluded that the prejudice necessary to warrant a mistrial was not present as a result of the comment.

■ It is the well-established law of this jurisdiction that the decision whether to pass a case and declare a mistrial is a matter within the sound discretion of the trial justice. *State v. Anil,* R.I., 417 A.2d 1367, 1372 (1980); *State v. Hoyle,* R.I., 404 A.2d 69, 70 (1979). In considering a motion to pass based on allegedly prejudicial remarks, the trial justice must determine the potential prejudicial impact of the comments on the jury. *State v. Anil,* R.I., 417 A.2d at 1372–73.

■ Assuming, without decision, that this issue is properly before us,[15] we find that the trial justice's denial of the motion

14. The defendant argues that the trial justice's comment was potentially critical because the record does not indicate whether the height differential was substantial or very close. A review of the record reveals that one witness testified that one robber was much taller than the other. The trial justice then requested that defendants stand momentarily. The witness then indicated that the height differential between defendants and the height differential between the robbers was approximately the same. Therefore, the height differential was sufficiently significant to refute defendant's al-

legation that the trial justice may have invaded the province of the jury.

15. In its brief the prosecution argues that defendants' objection to the trial justice's denial of their motion to pass is not properly before this court because of defendants' failure to request a cautionary instruction. *See State v. Anil,* R.I., 417 A.2d 1367, 1373 (1980). The court's silence on this jurisdictional question should not be interpreted as a rejection of the state's argument.

to pass was proper. Under the circumstances it was not reasonable to infer that the jury would conclude, after hearing the remark and observing defendants' conduct, that defendants sought to conceal their heights by remaining seated as the jurors filed out. The jurors had observed defendants standing for arraignment and subsequently every day as the trial justice entered and departed. In light of their prior opportunities to view defendants standing in close proximity to each other, it seems unlikely that the jurors would conclude from the remark that defendants sought to conceal their heights.

The defendant did not show the type of prejudicial impact necessary to warrant the granting of a mistrial, and therefore, the trial justice acted properly in denying defendant's motion to pass.

J

■ Ashness additionally contends that the cumulative effect of all of the alleged errors and abuses of discretion resulted in a denial of a fundamentally fair trial. In light of our conclusion that the only error committed below was the trial justice's refusal to dismiss the charge of committing a crime of violence while armed, this argument has no merit because several rulings that individually are not erroneous cannot cumulatively constitute prejudicial error. *See Belanger v. Silva,* 120 R.I. 19, 26, 384 A.2d 605, 609 (1978).

II

Ashness's codefendant, Christopher Cole, also raises numerous issues, many of which are identical to those raised by Ashness. In order to avoid repetition, we refer the reader to our prior discussion of the following issues and hold that our decisions contained therein apply with equal force to defendant Cole: whether the trial justice's refusal to dismiss the commission-of-a-crime-of-vio-

lence count on double-jeopardy grounds was error; whether the trial justice erred in refusing to dismiss count 5, the assault with a dangerous weapon on Gerry Jones; whether the trial justice's denial of defendant's motion to sequester all witnesses was an abuse of discretion; whether the trial justice abused his discretion in denying defendant's motion to sever; whether the trial justice abused his discretion in allowing a prosecution witness to render expert opinions; whether the trial justice erred in requesting defendants to stand up and stating for the record which was the taller of the two and which was the shorter; and whether the trial justice erred in denying defendant's motion to pass. We shall now consider individually the issues that are unique to defendant Cole's appeal.

A

The first contention argued by defendant Cole is that the trial justice erred in granting defendant Ashness's motion for a view over the objection of defendant Cole, thereby causing prejudice to his cause. Ashness made a motion for a view in which the state joined. Cole objected on the ground that a view was unnecessary because there would be testimony and photographs that would sufficiently describe the scenes to the jury. The trial justice granted the motion, noting that in deciding whether a view would be helpful to the jury in a situation in which the defendants adopt contrary positions, he was inclined to agree with the defendant who asserts that the view would aid the jury.

■ The decision whether to grant or deny a motion for a view is a discretionary matter for the trial justice. *State v. Clark,* R.I., 423 A.2d 1151, 1157 (1980); *State v. Carsetti,* 111 R.I. 642, 646, 306 A.2d 166, 169 (1973).[16] This court will not overturn his resolution of the question unless the com-

---

16. General Laws 1956 (1969 Reenactment) § 9–16–1 provides:
 "Court order for view.—In all cases in which it shall seem advisable to the court, on re-

quest of either party, a view by the jury may be ordered; and in all such cases the court shall regulate the proceedings at the view and in its discretion accompany the jury."

plaining party demonstrates that he abused his discretion. *State v. Clark,* R.I., 423 A.2d at 1157.

 Cole's opposition to a view at the trial was based solely on the ground that it was not necessary. In his brief, defendant merely makes a bald assertion that the taking of the view was prejudicial to his interests. He fails to specify why or how the view was prejudicial. Because of this lack of any showing of prejudice, we cannot say that the trial justice abused his discretion in granting the motion for a view over defendant's objection.

### B

The next question raised by defendant Cole is whether the trial justice erred in allowing two witnesses to testify who were not named in discovery. Initially, we will briefly discuss the circumstances regarding each contested witness.

The first witness in question was the wife of the owner of the Mercury automobile driven by defendant Ashness. The state called her to testify about the time and place she left the automobile and about the facts both that it was gone when she returned and that she had not given anyone permission to use it. Before the witness began the substance of her testimony, defense counsel moved to strike her testimony and to preclude her from testifying further because her name had not been furnished by the state when counsel had requested discovery. The trial justice ordered the state to provide a summary of the witness's expected testimony and to refrain from recalling the witness for approximately twenty-four hours. Subsequently, the trial justice allowed the state to recall the witness later that day after finding that defense counsel had been supplied with her husband's statement which related her testimony and that they therefore had sufficient notice of her testimony. The witness then testified as described above.

The second contested witness was a police officer who was present in the parking lot where defendants abandoned the Mercury and the police arrested defendant Cole. The officer was to testify regarding the discovery of several guns on the ground in the lot, their location, the fact of his removal of the ammunition from them, and his supervision of the area until a police detective arrived. His testimony was primarily intended to serve as a link in the chain of custody of the guns. The trial justice allowed the witness to testify because he was merely confirming the testimony of earlier witnesses regarding the guns in the lot and therefore no prejudice would result.

 It is within the sound discretion of the trial justice to decide whether to allow a witness to testify whose name was not provided to a party who properly filed for discovery. *Gormley v. Vartian,* 121 R.I. 770, 774 n. 1, 403 A.2d 256, 258 n. 1 (1979); *Buckler v. Sinclair Ref. Co.,* 68 Ill.App.2d 283, 290, 216 N.E.2d 14, 18 (1966); *Southern Pac. Co. v. Watkins,* 83 Nev. 471, 493, 435 P.2d 498, 512 (1967). Calling such a witness is a clear violation of the discovery rules. However, "forbidding a party to call a witness is a drastic sanction that should be imposed only if it is apparent that the violation has or will result in prejudice to the party asserting the violation." *Gormley v. Vartian,* 121 R.I. at 775, 403 A.2d at 259.

 We cannot find, nor has defendant affirmatively shown, any prejudice resulting from the testimony of the two witnesses who were not named in discovery. The testimony of the first witness, the wife of the owner of the Mercury, was basically a reiteration of her husband's testimony regarding the custody of the automobile and was not direct testimony on the guilt or innocence of either defendant. Furthermore, defendants did have notice of her expected testimony due to its inclusion in her husband's statement which was provided to defendants in discovery. The second witness, the police officer who supervised the parking area until a police detective arrived, merely testified for the purpose of establishing the chain of custody of the weapons found in the lot. Earlier witnesses

testified about the discovery and location of the firearms so that the police officer's testimony merely confirmed their statements. In light of the substance of the witnesses' testimony and the circumstances surrounding each, defendant did not suffer any prejudice from the trial justice's decision to allow the two witnesses to testify. Therefore, the trial justice did not abuse his discretion in regard to either witness.

### C

The third distinct issue raised by defendant Cole is whether the trial justice erred in allowing certain items of evidence to be marked as full exhibits over defendant's objection. The three contested exhibits consisted of two shell casings and one copper jacket from a spent projectile, which were all found inside the Mercury automobile driven by defendant Ashness at the time the police first gave chase. The defendant objected, asserting that the items were irrelevant because they had not been identified as relating to the alleged crime. The trial justice allowed the items to be marked as full exhibits. He concluded that the casings and jacket were relevant in light of the pursuing officer's testimony that he had fired at the rear of the Mercury and that he had seen four flashes from the vehicle in the lot. Cole disagrees and claims that he was unduly prejudiced by their admission.

The well-settled rule in this jurisdiction is that the admissibility of evidence when opposed by an objection of irrelevancy is a discretionary matter for the trial justice to resolve. *Kelaghan v. Roberts,* R.I., 433 A.2d 226, 231 (1981); *Engelhardt v. Bergeron,* 113 R.I. 50, 57, 317 A.2d 877, 882 (1974). His ruling on such a question is not reversible error unless the trial justice abused his discretion to the prejudice of the objecting party. *Romano v. Ann & Hope Factory Outlet, Inc.,* R.I., 417 A.2d 1375, 1379 (1980); *Engelhardt v. Bergeron,* 113 R.I. at 57–58, 317 A.2d at 882.

The defendant has not made any affirmative showing of prejudice resulting from the admission of the casings and the copper jacket, and we are at a loss to find any. Therefore, we hold that the trial justice did not abuse his discretion in allowing the contested items to be marked as full exhibits.

### D

Cole also contends, as did Ashness, that the cumulative effect of all of the alleged erroneous rulings of the trial justice effectively denied him his right to a fair trial. We have concluded that none of the rulings complained of were erroneous or prejudicial and that therefore this claim is without merit because several rulings that individually are not erroneous cannot cumulatively constitute prejudicial error. *See Belanger v. Silva,* 120 R.I. at 26, 384 A.2d at 609.

### E

The final contention asserted by defendant Cole, which he personally argued before this court, is that he was denied effective assistance of counsel. In support of this claim he cites the failure of his trial attorney to interview prospective witnesses, to file a timely challenge to the composition of the grand jury, and to present the defense that a reasonable hypothesis of innocence existed on the facts presented by the state. This issue, however, is not properly before us, and we therefore decline to address the merits of defendant Cole's claim.

It is the well-established practice of this court that we shall refrain from reviewing claims of incompetency of counsel on direct appeal unless they are based upon specific rulings of the trial justice. *State v. Roderick,* 121 R.I. 896, 899, 403 A.2d 1090, 1092 (1979); *State v. Levitt,* 118 R.I. 32, 40, 371 A.2d 596, 600 (1977); *see State v. Freitas,* 121 R.I. 412, 417, 399 A.2d 1217, 1219 (1979). In the instant case, defendant Cole does not refer us to any specific ruling of the trial justice which deprived him of the effective assistance of counsel. Rather, he draws our attention to certain conduct on his attorney's part which he claims demon-

strates his incompetency. Although we recognize the importance of this Sixth Amendment claim, we are unable to address it on direct appeal absent a ruling by the trial justice adversely affecting defendant's rights. The proper procedure for raising this claim is by means of a petition for postconviction relief.[17] Our ruling today is in no way a reflection upon the merits of defendant Cole's claim and has no effect on his right to assert that claim in the more appropriate form of a postconviction proceeding.

The defendants' appeals are sustained in part and denied in part. The judgment of conviction entered against defendant Richard Ashness under count 13 of indictment No. 80–71 is vacated and dismissed, and all other judgments of conviction under the indictment are affirmed. In reference to defendant Christopher Cole, the judgment of conviction regarding count 13 of indictment No. 80–71 is also vacated and dismissed, and all other judgments under that indictment are affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

Frank A. Carter, Jr., Chief Disciplinary Counsel, Providence, R.I., for plaintiff.

John B. Reilly, Warwick, for defendant.

---

17. General Laws 1956 (1969 Reenactment) § 10–9.1–1(a)(1), as enacted by P.L.1974, ch. 220, § 3, provides that a person may file a petition for postconviction relief on the ground "that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state."

