384 A.2d 605.

JOSEPH BELANGER *et ux. v.* ARMAND G. SILVA *d/b/a*
MAPLE HILL NURSERY.

ARMAND G. SILVA *d/b/a* MAPLE HILL NURSERY *v.*
JOHN J. CLARKE INSURANCE, INC. *et al.*

APRIL 10, 1978.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

JOSLIN, J. This third-party civil action arose out of, but was severed from, an action for negligence commenced by Joseph and Viola Belanger against Armand G. Silva, doing business as Maple Hill Nursery, for injuries allegedly

sustained when Viola slipped and fell while a business invitee on Silva's premises. Before that action was tried, Silva impleaded his insurance agent, John J. Clarke Insurance, Inc. (defendant), as a third-party defendant, on the theory that it had breached an agreement to procure insurance covering him for claims like the Belangers'. The defendant in turn impleaded Shelby Mutual Insurance Company as an additional third-party defendant on the premise that, in its dealings with Silva, it had both acted within the scope of its authority as Shelby's general agent and disclosed that relationship to Silva.

To avoid confusion, the Belangers' original action against Silva was severed from the third-party action and tried separately. That trial resulted in judgment of $12,674 for the Belangers. The third-party action was then tried to a judge and jury. Shelby was eliminated from the case when its motion for a directed verdict was granted; no appeal has been claimed. Silva's suit against the defendant, however, was submitted to the jury, which returned a verdict for him in the same amount as the Belanger judgment, plus counsel fees of $2,000 and interest. Following that verdict, defendant's motion for a new trial was denied, whereupon it appealed.[1]

Silva owns and, with his wife, operates the Maple Hill Nursery. In 1968 the Silvas were approached by John J. Clarke Jr. (Clarke, Jr.), an employee of defendant and a son of its then president, John J. Clarke, Sr. (Clarke, Sr.). Clarke, Jr. suggested that Silva could decrease his insurance costs if, instead of purchasing coverage through various agencies which in turn placed the policies with different carriers, he consolidated his insurance in a "one packet deal" with defendant. After some persuasion, Silva consented and agreed with Clarke, Jr., that his current policies would be replaced as they expired with new ones issued

---

[1] In an earlier phase of the case we reversed a summary judgment for defendant. *Belanger* v. *Silva*, 114 R.I. 266, 331 A.2d 403 (1975).

through defendant. According to Silva and his wife, the current policies included a liability insurance policy. Clarke, Jr., however, emphatically denied at trial both that he had agreed to procure that kind of coverage and that Silva had requested it. Also in question was whether, in the negotiations with Silva, Clarke, Jr., disclosed that he was acting as Shelby's authorized agent.

In any event, because defendant did not procure liability insurance, Silva had no insurance coverage for the Belangers' claims. What Silva seeks in this litigation is, in substance, indemnity for all expenses or losses resulting from the Belangers' action against him.

Initially, defendant contends that a verdict should have been directed in its favor for any one of the following separate, but mutually inconsistent, reasons:

1. There is no evidence that it agreed to procure liability insurance;

2. It was acting on behalf of Shelby, a disclosed carrier, when it agreed to procure liability insurance, and therefore is not liable for failure to procure coverage under the holding of *Cardente* v. *Maggiacomo Insurance Agency, Inc.*, 108 R.I. 71, 272 A.2d 155 (1971);[2] and

3. Its sole obligation under its agreement with Silva was to procure coverage for 1 year, and a policy issued for a 1-year term would have expired 2 months before Mrs. Belanger's injury.

Consideration of these grounds required the trial justice, as it does us, to view the evidence and the inferences to

---

[2]In *Cardente* v. *Maggiacomo Insurance Agency, Inc.*, 108 R.I. at 73, 272 A.2d at 156, we held that:

"[A]n insurance agent who fails to make policy changes requested by an insured is not responsible to the insured for that failure if when he agreed to procure the change he was acting for a disclosed carrier and had authority to do what he agreed to do."

which it is reasonably susceptible in the light most favorable to Silva, without regard to its weight or the credibility of the witnesses. *Evans* v. *Liguori*, 118 R.I. 389, 394, 374 A.2d 774, 776 (1977); *Powless* v. *Pawtucket Screw Co.*, 116 R.I. 158, 161, 352 A.2d 643, 646 (1976). The record so viewed discloses testimony and inferences in direct conflict with the factual assumptions underlying each ground upon which defendant's arguments rest. Yet defendant ignores those conflicts and therein lies the weakness of its contention, for a verdict should not be directed if the evidence on a controlling issue is in conflict. *Fontaine* v. *Devonis*, 114 R.I. 541, 543-44, 336 A.2d 847, 850-51 (1975); *Hone* v. *Lakeside Swimming Pool & Supply Co.*, 114 R.I. 394, 396, 333 A.2d 430, 431 (1975).

The defendant next contends that either the individual or the cumulative impact upon the jurors of several so-called "extraordinary events" was sufficiently prejudicial to require the trial judge to pass the case. Defendant classifies as "extraordinary events" the following: (1) a statement by Silva which was arguably a reference to Clarke's insurance coverage; (2) the evidence of a rift in the Clarke agency; (3) the misconduct of an alternate juror; and (4) an emotional outburst in the courtroom by Silva.

### Reference to "Insurance"

In the course of his testimony Silva, in what appears to have been an attempt to explain Clarke, Sr.'s apparent lack of concern about the failure to procure insurance, quoted Clarke, Sr. as saying " '[w]e're protect [*sic*] for our own mistakes.' " Defense counsel immediately moved to pass the case on the ground that the only meaning the jury could reasonably attribute to that comment was, " 'we have liability insurance to cover us in the event we make mistakes at the agency.' "

In deciding a motion to pass a case after insurance coverage has been mentioned, a trial justice must first consider the comment in context and then either (1) pass the

case, if satisfied that the reference to insurance so prejudiced the minds of the jurors as to render them incapable of reaching a fair and impartial verdict; or (2) give an appropriate cautionary instruction either when the reference to insurance is made or when he charges the jury, if he believes that such an instruction will eliminate the possibility of prejudice in the jurors' minds and that they can reasonably be expected to return a verdict based solely on the evidence, uninfluenced by the reference. *Cochran* v. *Dube*, 114 R.I. 149, 152, 330 A.2d 76, 78 (1975); *Lewis* v. *Allard*, 108 R.I. 534, 537, 277 A.2d 744, 746 (1971); *Harrod* v. *Ciamciarulo*, 95 R.I. 504, 506-07, 188 A.2d 459, 460 (1963).

Here, in the trial justice's judgment, the possibility that Silva's remark would create irreparable prejudice to defendant was not substantial enough to require passing of the case; he concluded that he would not have passed the case even if Silva had quoted Clarke, Sr. as stating that " '[w]e have insurance to protect ourselves.' " He recognized, however, that Silva's repetition, in broken English, of the statement " '[w]e're protect [*sic*] for our own mistakes,' " while susceptible to different interpretations, might be construed to mean that defendant was protected by insurance against errors and mistakes and that, so construed, the statement might influence the jury. Accordingly, and in order to avoid highlighting a remark that the jury might otherwise have ignored, he allowed defendant to decide whether or not a cautionary instruction should be given. In opting against such an instruction, defense counsel said "I certainly waive any request, and expressly request that the Court, at this time, not make any instruction to the jury." In assigning as error both the trial justice's refusal to pass the case and his failure to give a cautionary instruction, defendant now attempts to renege on his counsel's trial strategy. This we will not permit.

### Rift in the Agency

Defendant also moved to pass the case on the basis of Mrs. Silva's testimony that, in 1970, Clarke, Jr. and his parents "were having internal troubles" within the agency. We fail to comprehend how testimony of a rift in the agency in 1970 could have prejudiced defendant, if only because such troubles, if they occurred, took place subsequent to the events upon which this action is based. Therefore, by instructing the jury to disregard that testimony as totally irrelevant and immaterial, the trial judge responded appropriately to defendant's objection.

### Jury Misconduct

Early in the trial the trial justice learned that an alternate juror had allegedly been overheard saying that he had made up his mind about the case. Thereupon, the trial justice excused that juror, instructed the other jurors to disregard his absence, and repeated his earlier admonition against their discussing the case until it was submitted to them for consideration. Notwithstanding, defendant moved to pass the case on the ground that another juror, who had been observed going to coffee with the dismissed alternate, appeared hostile and thus might have been infected by the alternate juror's prejudice.

The motion was addressed to the trial justice's discretion. *State* v. *Berberian*, 118 R.I. 413, 419, 374 A.2d 778, 781 (1977). He refused to pass the case on the ground that the motion was based on nothing more substantial than pure speculation. In our judgment that refusal did not constitute the kind of patent abuse of discretion warranting interference by this court. *See Webbier* v. *Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 616-17, 254 A.2d 285, 291 (1969).

### Emotional Outburst

After the testimony of Clarke, Jr., the last witness to

testify before the parties rested, the transcript states:

> "(There was an outburst in the courtroom from the plaintiff, Armand Silva.)"

The court admonished Silva and the following exchange then took place:

> "Mr. Silva: He's a big liar.
> "The Court: I suggest you're not doing your own case any good, sir.
> "Mr. Silva: Sir, I'm hurt."

The trial justice thereupon directed the jury to ignore these remarks. The defendant did not move to pass the case at that time and is precluded from urging on appeal that the trial justice erred in failing to pass the case on his own motion.

The defendant further argues, as we have already indicated, that the cumulative effect upon the jury of these several "extraordinary events" was so prejudicial that it interfered with the right to a fair trial, and consequently required that the case be passed. Although defendant cites no authority to support its position, we surmise that it is probably relying on *State* v. *Pepper*, 103 R.I. 310, 318, 237 A.2d 330, 335 (1968). In that case we held that a series of rulings, none of which standing alone was prejudicial, could nonetheless have a combined effect that was sufficiently prejudicial to require a new trial. But each of the rulings in *Pepper* was erroneous, whereas the rulings complained of in this case were not only nonprejudicial but also not even erroneous. We are unable to comprehend how several rulings which individually are not erroneous can cumulatively constitute prejudicial error.

The defendant's final contention is that the trial justice erred in denying its motion for a new trial. That contention is based upon two grounds, the first of which according to defendant's brief is that "[t]he trial justice refused to instruct the jury as to the law of *Cardente* v. *Maggiacomo*,

*supra,* and defendant submits therefore that it is entitled to a new trial." Under our procedure, however, a trial justice's refusal to charge is not a proper basis for a motion for a new trial and can be assigned as a ground of appeal only if a request was made to charge differently or if objection was made to the charge as given. *Roland Bileau Transportation Co.* v. *Lodie Brien, Inc.,* 100 R.I. 723, 727, 219 A.2d 401, 403 (1966); *Grassi* v. *Gomberg,* 81 R.I. 302, 305, 102 A.2d 523, 525 (1954); 1 Kent, R.I. Civ. Prac. §51.4 at 377, §59.6 at 443 (1969). In this case neither the request nor the objection was made.

The second ground is that the verdict was against the weight of the evidence. Instead of supporting that ground by pointing to evidence which the trial justice overlooked or misconceived, defendant urges in effect that its evidence was the more weighty and its witnesses the more credible, and that therefore the trial justice erred in not granting its motion for a new trial. Those arguments were in the first instance for the jury, and then for the trial justice; doubtlessly they were addressed to both; they have no place in appellate proceedings. *Marstan Corp* v. *Centreville Reality Co.,* 106 R.I. 36, 38, 256 A.2d 26, 27 (1969).

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

Mr. Justice Paolino participated in the decision but retired prior to its announcement.

*Robert R. Afflick, David G. Lussier,* for plaintiff Armand G. Silva d/b/a Maple Hill Nursery.

*Hanson, Curran & Parks, A. Lauriston Parks,* for defendant John J. Clarke Insurance, Inc., et al.