**Woon Kam YOUNGSAYE et al.**

v.

**Jacques G. SUSSET, M.D., et al.**

No. 2008–9–Appeal.

Supreme Court of Rhode Island.

June 8, 2009.

Mark S. Mandell, Esq., Providence, for Plaintiffs.

James A. Musgrave, Esq., Providence, for Defendants.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

**O P I N I O N**

Chief Justice WILLIAMS (ret.), for the Court.

The defendants, Jacques G. Susset, M.D., and Jacques G. Susset, M.D., Inc.

(collectively defendants), appeal from a judgment of the Superior Court holding them liable for injuries suffered by the plaintiff, Woon Kam Youngsaye (plaintiff), as a result of their negligent medical care. The defendants submit that the trial justice committed reversible error by improperly instructing the jury on a question of fact and thereafter by declining to pass the case or grant a new trial. This case came before the Supreme Court for oral argument on May 12, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we deny and dismiss the defendants' appeal.

# I

## Facts and Travel

During a routine physical examination with her primary care physician, Dr. Frank D'Allesandro, M.D., in February 2000, plaintiff underwent a urinalysis that revealed the presence of blood and protein in her urine. After a second urinalysis, performed two months later, returned the same results, Dr. D'Allesandro advised plaintiff to consult a urologist.

Accordingly, plaintiff scheduled an appointment with Dr. Jacques G. Susset, M.D., whom she visited on May 30, 2000. Under Dr. Susset's care she underwent another urinalysis, which again indicated the presence of blood in her urine. Subsequent urinalyses performed on plaintiff on June 6, July 3, and July 24, 2000, all confirmed the results of the earlier tests. Doctor Susset did not order a blood test,

however, because he assumed that Dr. D'Allesandro had done so and that he would have communicated any abnormal results to Dr. Susset. Doctor Susset also did not contact Dr. D'Allesandro to verify these assumptions.

On July 27, 2000, plaintiff returned to Dr. D'Allesandro complaining of nausea and weight loss. After blood tests indicated that plaintiff was suffering from kidney disease, Dr. D'Allesandro directed immediate hospital treatment. Thereafter, plaintiff experienced kidney failure, which required her to undergo dialysis and, eventually, a kidney transplant.

On May 29, 2003, plaintiff filed a complaint against defendants in the Superior Court, alleging negligent medical care. A jury trial followed in March 2007.[1] One of the issues that arose during discovery and again at trial was the existence of reports of the urinalyses performed on plaintiff on June 6 and July 3, as well as of office notes composed during her July 24 visit. Doctor Susset was unable to produce these records and provided conflicting testimony regarding the urinalysis reports.

At his deposition, Dr. Susset testified that a technician had prepared reports for plaintiff's urinalyses on June 6 and July 3. At trial, however, Dr. Susset backtracked, testifying that although a technician was responsible for preparing such reports for each urinalysis, he could not remember whether the technician had prepared reports for those visits or even whether a technician had been present on the dates in question. Testifying one week later, Dr. Susset retracted his statement that a report should have been prepared for each urinalysis and stated that a report would not have been prepared if the technician had not been available. Doctor Susset also testified that he was sure that he had

1. The plaintiff also named Dr. Frank D'Allesandro as a defendant in the complaint, but the jury found him not to be liable for her injuries. The instant appeal does not involve that judgment.

148 dictated office notes for plaintiff's visit on July 24, but did not know what had happened to them. According to Dr. Susset, he dictated notes for every patient visit.

■ At the conclusion of trial, the trial justice instructed the jury on the relevant law to apply to their findings of fact. The trial justice began by distinguishing her role from that of the jury. She explained: "It's the duty of the Court to instruct you in the law applicable to the case, and the law is to be applied by you to the facts in the case as you determine those facts to be." The trial justice later instructed the jury on the issue of evidence spoliation.[2] She stated as follows:

"During this trial, you have heard testimony that defendant Dr. Susset has been unable to provide certain diagnostic medical reports that were requested by the plaintiffs during the course of this lawsuit.

"A jury may properly consider the issue of spoliation where a defendant, one, has failed to produce a document which the evidence tends to show was routinely generated in his business and, two, has not been able to provide a satisfactory explanation as to why the document was not prepared with respect to the incident in the case before the Court.

"Under certain circumstances, spoliation of evidence may give rise to an adverse inference that the missing or spoliated evidence would have been unfavorable to the position of the party unable to produce it.

"Spoliation of evidence may be innocent or intentional or somewhere in between. However, it is the unexplained negligent or deliberate absence of relevant evidence that gives rise to an inference that the missing evidence would have been unfavorable to the position of the defendant.

"A showing of bad faith is not required before the jury will be permitted to draw this inference.

"*Here, Defendant Susset admitted that the reports requested by the plaintiffs are prepared in the normal course of his practice and further that he never looked in plaintiff's file to see if these reports had been prepared. As such, you may properly consider Defendant Susset's spoliation of evidence in drawing an inference that the missing reports contained evidence which would have been unfavorable to his position.*" (Emphasis added.)

Later, in concluding the instructions, the trial justice reminded the jury of its exclusive role as fact-finder. She cautioned:

"If, during the course of this trial or in giving you these instructions, the Court has said or done anything that has caused you to believe it was indicating an opinion as to what the facts in the case are, I instruct you that the Court intended to indicate no such opinion. You should not permit such words or acts, if any, to have any influence whatever on your determination as to what the facts are."

At a sidebar conference following the instructions, defendants objected to the spoliation charge on the grounds that it was not supported by the facts of the case and that it invaded the fact-finding role of the jury. Arguing that any potential curative instruction would highlight the issue of spoliation, which defendants contended should not have been before the jury in the

2. "The doctrine of spoliation provides that 'the deliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party.'" *Mead v. Papa Razzi Restaurant,* 840 A.2d 1103, 1108 (R.I.2004) (quoting *Tancrelle v. Friendly Ice Cream Corp.,* 756 A.2d 744, 748 (R.I.2000)).

first place, defendants motioned the Court to pass the case and declare a mistrial. After reevaluating the instructions, the trial justice denied the motion to pass. During a subsequent *in camera* conference, defendants declined an offer by plaintiff and the trial justice of a curative instruction, again contending that the error could be remedied only with a new trial. No curative instruction was provided to the jury.

On March 30, 2007, the jury found defendants responsible for plaintiff's injuries and awarded her $500,000 in damages. The Superior Court entered judgment in this amount, plus statutory interest. Thereafter, defendants filed a motion for a new trial, again challenging the spoliation instructions. The trial justice denied the motion on September 10, 2007, and defendants filed a timely notice of appeal on September 28, 2007.

## II

### Analysis

On appeal, defendants argue that the trial justice committed reversible error in the manner in which she instructed the jury on the issue of spoliation and then declined to pass the case or to grant a new trial on the basis of the allegedly erroneous instruction. Specifically, defendants contend that the trial justice prejudiced the jury and invaded its fact-finding province by imparting factual conclusions that: (1) Dr. Susset had testified to generating urinalysis reports in the regular course of business; and (2) Dr. Susset indeed had spoliated evidence. In response, plaintiff asserts that defendants did not properly preserve this issue for appeal because they declined cautionary instructions.

### A

#### Preservation

Because preservation is a threshold matter, we must address it before considering the substance of defendants' appeal. Rule 51(b) of the Superior Court Rules of Civil Procedure states in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection." We have explained that the purpose of Rule 51(b) is to afford the trial justice the opportunity to correct any potential errors in his or her instructions before the jury begins its deliberations. *Superior Group Ventures, Inc. v. Apollo II Sign Corp.*, 712 A.2d 359, 360 (R.I.1998); *Di-Franco v. Klein*, 657 A.2d 145, 147 (R.I. 1995); *A.R. Alvernas, Inc. v. Cohen*, 420 A.2d 78, 81 (R.I.1980). Accordingly, we generally will not permit a party who has declined curative instructions as a matter of trial strategy to turn around and challenge the original instructions on appeal. *See Belanger v. Silva*, 120 R.I. 19, 23–24, 384 A.2d 605, 608–09 (1978) (upholding the denial of a defendant's motion to pass arising from allegedly prejudicial testimony because the defendant had declined the trial justice's offer of curative instructions).

In this case, defendants complied with Rule 51(b) to the extent that they objected specifically to the spoliation charge before jury deliberations and articulated their grounds for doing so. However, by rejecting any curative instructions, defendants frustrated Rule 51(b)'s purpose of providing the trial justice the opportunity to correct the allegedly erroneous instructions. *See Superior Group Ventures, Inc.*, 712 A.2d at 360; *DiFranco*, 657 A.2d at 147. Without the benefit of such cautionary instructions, which well may have cured any error in the original charge, we are unable to conduct a fair and meaningful review of the original instructions. *See Belanger*, 120 R.I. at 23–24, 384 A.2d at 608–09.

## B

### Instructions on Spoliation

Notwithstanding the preservation issue, even if the trial justice did err in instructing on facts pertaining to spoliation, the charge, taken as a whole, did not so prejudice the jury as to warrant reversal. *See State v. Gillespie*, 960 A.2d 969, 975 (R.I.2008) (" '[W]e will not review a single phrase or sentence in isolation,' * * * but rather will examine it in the context of the whole instruction to determine whether it would have confused or misled the jury.") (quoting *State v. Fernandes*, 783 A.2d 913, 916 (R.I.2001)); *Mandros v. Prescod*, 948 A.2d 304, 310 (R.I.2008) ("An erroneous charge warrants reversal only if it can be shown that the jury could have been misled to the resultant prejudice of the complaining party.") (quoting *State v. Sivo*, 925 A.2d 901, 913 (R.I.2007)). We discern no error in the trial justice's explanation of the law of spoliation, and we are satisfied that any error as to her comments on the facts was cured by her cautionary statements on fact-finding. Both before and after her charge on spoliation, the trial justice instructed that her role was limited to explaining the relevant law to the jury so that the *jury* could apply the law to the facts as *it* found them to be. After the spoliation instructions, the trial justice further cautioned the jury that any statements in her instructions that evinced her opinion on the evidence were unintentional and should be disregarded.

In light of this warning, we are confident that the charge did not prejudice the jury against the defendants on the issue of spoliation. *See State v. Holland*, 122 R.I. 339, 348, 405 A.2d 1211, 1216 (1979) (the trial justice's improper instruction on a question of fact was mitigated by his earlier caution to the jury not to be influenced by his opinion of the facts). Accordingly, the jury's verdict was appropriate, and the trial justice did not err in denying both the defendants' motion to pass and their motion for a new trial.

### Conclusion

For the reasons stated herein, the defendants' appeal is denied and dismissed. The record shall be remanded to the Superior Court.