DECISION
Before this Court are Cumberland School Committee's (Defendant) post-trial motions. Roderick McGarry (Plaintiff) asserted two claims: age discrimination based on the Rhode Island Civil Rights Act and the Rhode Island Fair Employment Practices Act; and retaliation based on the Rhode Island Fair Employment Practices Act. After a jury trial, a verdict was returned in favor of Plaintiff for $329,814.00. Defendant renewed its Motion for Judgment as a Matter of Law and filed a Motion for New Trial. Defendant also moved for Remittitur. *Page 2 
 I FACTS
Plaintiff presented four witnesses in support of his claims that he was discriminated against on the basis of age for two teaching positions in the 1998-1999 school year and one position in the 1999-2000 school year. Under the burden-shifting framework required in proving these claims, Plaintiff established the prima facie elements of his claims. For each position, Plaintiff established he was a member of a protected class, that is, he was over forty years of age; he applied for the positions in question; he was not hired for each position; and Defendants hired teachers with similar qualifications from outside his protected class, that is, candidates less than forty years of age. Plaintiff further claimed that Defendant retaliated against him for filing age discrimination complaints against Defendant with the Human Rights Commission by refusing to offer him substitute teaching positions. Plaintiff demonstrated that he had engaged in a protected activity — seeking review of Defendant's decisions not to hire him with the Human Rights Commission. Plaintiff also demonstrated that he was not hired as a substitute teaching following his complaints.
Plaintiff testified he was fifty-six years old at the time of his first application for a teaching vacancy. He was a Hope High School graduate. He received his undergraduate college degree from Providence College in 1968, after dropping out several years earlier, and earned a master's degree in business from Bryant University in 1980. He had work experience in the telephone and trucking businesses and left the trucking business in 1996. From 1968-1996 Plaintiff held various positions of significant responsibility with several trucking companies. For one year during this period, 1969-1970, Plaintiff was a teacher at Cumberland High School but left because the compensation was not adequate to support his family. After twenty-six years of *Page 3 
managing personnel in the trucking industry, Plaintiff testified he was tired of the pressure of being on the road, managing several thousand employees and that it was time to make a change.
In 1996, Plaintiff reactivated his teaching certificate in business and social studies for the middle and high school grade levels. He began seeking substitute teaching positions in several public school systems including Woonsocket and Lincoln, Rhode Island and Bellingham, Massachusetts.
After leaving in 1970, Plaintiff's next contact with the Cumberland school system was as a substitute teacher in the spring of 1997. He worked for two weeks as a substitute social studies teacher at a Cumberland middle school under the supervision of its principal, Joyce Koutsogiane. The following year, 1997-1998, he continued to teach as a substitute in Cumberland's middle schools and high school.
In the 1998-1999 school year, two English teacher positions were advertised: one full-time and one part-time. Just prior to applying for these positions, Plaintiff took several English courses that were required to obtain certification under state law to teach middle and high school English.
In support of his application for the English teacher positions, Plaintiff obtained letters of recommendation from three Cumberland school principals he had worked for as a substitute teacher: Ms. Cipriano, Mr. Parent and Ms. Koutsogiane. A committee consisting of Ms. Koutsogiane and two English teachers interviewed all the applicants for these positions, including Plaintiff.
The Plaintiff, in describing the interview, indicated nothing exceptional occurred. He recalled that general questions about teaching and teaching philosophy were read from a question sheet used by the committee members. He went so far as to describe the experience as a *Page 4 
"pleasant interview." When asked about note taking by the committee members during the interview, Plaintiff responded "maybe to some degree" but conceded he did not see a lot of writing during the interview itself.
Shortly after the interview process concluded, Plaintiff was informed by Principal Koutsogiane that he did not make the list of three finalists for these positions and consequently his name was not forwarded to the Superintendent.
One year later, Plaintiff applied for and was interviewed for another teaching position, a part-time English position, for the 1999-2000 school year. After evaluating all the candidates, the committee ranked Plaintiff tied with another candidate for second. The committee forwarded only the highest ranking candidate to the Superintendent.[1]
On September 2, 1998, the Plaintiff requested a review of his file through the office of the Superintendent, Joseph Nasif. Upon review of the file, it was discovered that the interview committee's scoring and evaluation sheets were missing for the 1998-1999 positions. However, the 1999-2000 interview sheets were found in the file. The Court notes with interest that the 1999-2000 interview notes are devoid of any direct or inferential evidence of age discrimination.
On cross examination, Plaintiff stated that he felt he was the best candidate for the 1998-1999 English positions and was confident he would be hired. Upon further examination, however, he conceded he did not know how many candidates had applied or the quality of those candidates.
On the specific subject of Plaintiff's age and whether he believed it played any role in not being hired, Plaintiff's responses are noteworthy. On direct examination, Plaintiff was asked what led him to believe his age was the reason for not being hired. His response was, when he *Page 5 
looked in his school department personnel file and found no indication that he was unsuitable for the position, he concluded it was age because there was nothing else to explain not being hired. On cross examination, when asked what role age played in not being hired, Plaintiff stated he couldn't think of any other reason than the people who received the positions were under forty years old. When pressed by defense counsel for other evidence of age discrimination, he replied that he didn't know of any.
The second witness, Principal Roger Parent testified that Plaintiff taught in his middle school in 1996. Mr. Parent indicated there were no issues with Plaintiff's performance as a substitute teacher. Mr. Parker also submitted a letter of recommendation in support of Plaintiff's application for permanent teaching positions.
In describing the teacher hiring process, Mr. Parent testified that he would pick committee members who reviewed each candidate's application, resume, transcript and letters of recommendation. The committee would decide a set of questions designed to identify the strengths and weaknesses of each candidate in assessing whether a candidate was a "good fit" for the school. The committee would create a rating sheet to be utilized during the candidate's interview and would proceed to rank the candidates. The highest ranked candidates were forwarded to the superintendent.
The next witness was Joyce Koutsogiane, who was both the principal at the middle school where Plaintiff had taught as a substitute teacher and a member of the committee that interviewed and evaluated Plaintiff for the permanent positions at issue.
Ms. Koutsogiane described the interview and evaluation process followed regarding Plaintiff's application for the permanent positions. She testified that once a position was opened, the Human Resources Department would forward her a list of potential candidates. The *Page 6 
committee would review each candidate's folder, including verifiying that the candidate was certified in a particular subject, and would decide who should be interviewed for the position. The committee developed interview questions, and Ms. Koutsogiane created an evaluation form that was used during all interviews. Once the candidates were ranked, the general practice was to send three names to the Superintendent. At the conclusion of the interview process, the rating sheets were placed in an envelope and returned to the Superintendent's office. For no apparent reason, Ms. Koutsogiane retained the 1999-2000 rating sheets which were introduced at trial. However, Plaintiff's 1998-1999 rating sheets, which Ms. Koutsogiane insists were sent to the Superintendent's office, have never been located.[2]
On cross examination, Ms. Koutsogiane maintained that no one mentioned age during the committee's evaluation of Plaintiff. She described Plaintiff as a "pretty good" candidate but ranked below the candidates who were ultimately selected. She also indicated that the school department had hired a number of teachers over forty years of age during her tenure.
The final witness was Superintendent Joseph Nasif. Mr. Nasif had no direct participation in the interview and evaluation process for open teacher positions in the years 1998-1999 and 1999-2000. However, upon his hiring of candidates ranked higher than Plaintiff for these positions, he received notice from the Commission of Human Rights that Plaintiff had filed a charge of discrimination against the School Committee. This notice was received on January 4, 1999.
Mr. Nasif also testified that in early September of 1998, he and Plaintiff exchanged several letters. Plaintiff requested a copy of his entire personnel file, including his applications for permanent employment. Within days, Mr. Nasif replied that Plaintiff's personnel file was available for inspection and copying at the School Department's administrative office. In late *Page 7 
September of 1998, letters were again exchanged. Plaintiff sought the whereabouts of the committee's interview notes taken during the interview for the teaching positions in question. Mr. Nasif responded that any notes resulting from his interviews would have remained with the person in charge of the interview, namely, Ms. Koutsogiane. In previous testimony, however, Ms. Koursogiane stated that although she kept the 1999-2000 notes, she sent the 1998-1999 notes to the Superintendent's office.
Given the testimony (1) that School Department officials regularly drafted and used forms for the evaluation of job candidates, and had done so for the 1998-1999 positions; and (2) that School Department officials testified to differing record-keeping methods, and ultimately could not find the notes, the Court instructed the jury on spoliation. The Court instructed the jury as follows:
 "[Y]ou may consider the issue of spoliation of evidence, that is, destruction of evidence, where a defendant:
 (1) has failed to produce a document which the evidence tends to show was routinely generated in its business, and;
 (2) has not been able to provide a satisfactory explanation as to why the document was not produced with respect to the incident in the case before the Court.
 The plaintiff is not required to show that the defendant destroyed or lost the documents in bad faith. Spoliation of evidence may be innocent or intentional or somewhere in between. You may consider the facts and circumstances which were proven at trial relating to the 1998-1999 interview notes. You may consider who had custody or control of the notes, how they were destroyed or lost, the lack of explanation thereof for their destruction, the timing of the destruction, as well as any other facts and circumstances bearing on this issue.
 If you find that there is an unexplained, and negligent or deliberate absence of relevant evidence, you may infer that the missing evidence would have been unfavorable to the position of the defendant." *Page 8 
Plaintiff also claims that Defendant unlawfully retaliated against him after he filed age discrimination claims with the Rhode Island Human Rights Commission. Plaintiff argues that because of his administrative action regarding the failure to hire, Defendant refused to hire Plaintiff for subsequent substitute teaching positions. Plaintiff testified that after learning he was not hired for the 1999-2000 school year, he immediately took jobs at a school in Lincoln and the Sawyer School. Although Plaintiff testified that he was not looking for substitution jobs, he testified that it was "not totally" correct that he was no longer interested in substitute teaching. When pressed, however, Plaintiff admitted that he did not want to "babysit" and that he was not willing to do some things that he knew the public schools — not necessarily Defendant alone — wanted of their substitutes.
The Court instructed the jury on retaliation as follows:
 "To prove the required elements . . . Plaintiff must establish, by a fair preponderance of the evidence:
 (1) He engaged in a protected activity
 (2) He suffered an adverse employment action, that is, he was not hired by the Defendant; and
 (3) A causal link exists between the protected activity and the adverse action.
 The next step of your analysis requires you to decide whether the Defendant has established legitimate, non-discriminatory reasons for their actions toward Plaintiff of whether the Plaintiff has shown that Defendant's reasons are pretextual, that is, a false or deceptive cover for unlawful retaliation against Plaintiff."
On February 24, 2010, the jury returned a verdict in favor of the Plaintiff, Roderick A. McGarry in the amount of $329,814.00. The jury found Defendant liable for both age discrimination and retaliation. Defendant then renewed its Motion for Judgment as a Matter of Law, filed a Motion for a new Trial, and requested a Remittitur. *Page 9 
 II ANALYSIS
Plaintiff's case centered on Defendant's loss of the notes that were taken by each member of the interviewing committee during the 1998 interview. Plaintiff argued vigorously that the disappearance of the notes was suspicious given Plaintiff's substitute teaching experience, qualifications, and the lengthy travel of this case through the administrative process. Plaintiff persuaded the Court that a spoliation instruction was appropriate, thereby permitting the jury to draw an adverse inference regarding the substance of the missing notes. At trial, however, no evidence to support or corroborate the inference that the notes contained age animus was adduced. Despite this missing link, the jury returned a verdict for Plaintiff. Defendant thereafter renewed his motion for judgment as a matter of law and moved for a new trial.
Both motions before the Court require a determination of whether the negative inference arising out of Defendant's loss of the 1998-1999 notes can sustain a jury verdict in Plaintiff's favor when there is no extrinsic or independent evidence tending to show that Defendant discriminated against Plaintiff on the basis of his age [or retaliated against Plaintiff where there is no extrinsic evidence tending to show that Defendant retaliated against Plaintiff for engaging in a protected activity]. In the judgment as a matter of law context, the question is whether there is "a legally sufficient evidentiary basis for a reasonable jury to find" age discrimination and for retaliation. Super R. Civ. P. 50(a)(1). In the new trial context, the question is whether it was an error of law for the jury to be instructed on spoliation where there was no independent evidence to corroborate the negative inference. *Page 10 
 A JUDGMENT AS A MATTER OF LAW Standard of Review
In reviewing a motion for judgment as a matter of law, the trial justice "considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party."Black v. Vaiciulis, 934 A.2d 216, 219 (R.I. 2007) (quotingDeChristofaro v. Machala, 685 A.2d 258, 262 (R.I. 1996)). The trial justice may grant the motion upon determining that "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Super R. Civ. P. 50(a)(1). "However, the motion must be denied if there are factual issues concerning which reasonable people may reach differing conclusions."Botelho v. Caster's, Inc., 970 A.2d 541, 544-45 (R.I. 2009) (citing Trainor v. The Standard Times,924 A.2d 766, 769 (R.I. 2007)).
 Analysis
Age Discrimination
The Court has examined the evidence in the light most favorable to the Plaintiff as it relates to Plaintiff's prima facie case, to Defendant's shifting burden of production regarding legitimate, non-discriminatory reasons for not hiring Plaintiff, and, finally, to Plaintiff's evidence establishing Defendant's proffered reasons were false or pretextual.
There is no question that Plaintiff's evidence establishes the required prima facie case. There is also ample evidence from which a reasonable jury could find that there were valid non-discriminatory reasons for not hiring Plaintiff. It is Plaintiff's final burden of evidence production — and the ultimate burden of persuasion — that troubles the Court. In viewing the *Page 11 
record on the issue of whether Plaintiff presented sufficient evidence that Defendant's reasons for not hiring him as a teacher were false of pretextual, the Court finds that this evidence, along with the reasonable inferences that may be drawn therefrom, is legally insufficient.
Plaintiff concedes his interviews for the teaching position were appropriate and, in fact, pleasant. He recalled no questioning relating to age or discriminatory animus of any kind. He further acknowledged minimal note taking by the interview committee members during the questioning.
Ms. Koutsogiane, the only participant in the interview process called to testify, confirmed Plaintiff's benign description of his interviews. She stated that there was no discussion of age during Plaintiff's interview process and that she came away with an overall favorable impression of Plaintiff as a candidate. Unfortunately, the evidence also suggests that after an evaluation of the various candidates' education, teaching philosophies, and instructional approaches, Plaintiff was ranked below the candidates selected for each position.[3]
The Court is left to ponder two questions. First, does the evidence establish that Defendant's reasons for not hiring Plaintiff were false or pretextual? Second, does the evidence establish that age discrimination was a factor in not hiring Plaintiff?
The only evidence in the record upon which a jury could find age discrimination must rest upon an adverse inference drawn from the missing 1998-1999 interview notes. Without that inference, there is no legally sufficient evidentiary basis upon which a reasonable jury could find Plaintiff was discriminated against on the basis of age.
While the Court originally believed the spoliation instruction was warranted in this matter based upon Rhode Island law, the Court must now decide whether a spoliation inference, standing alone, is legally sufficient to establish age discrimination in this case. *Page 12 
Rhode Island law does not address the issue of how much extrinsic evidence, if any, is required to corroborate the adverse inference derived from spoliated evidence. The cases that are analogous to this one — in which spoliation permitted an inference in support of the prevailing plaintiff — all contain other evidence sufficient to sustain a jury verdict independent of the negative inference flowing from the missing evidence. These cases, however, do not stand for the proposition that extrinsic evidence is required to sustain a verdict against the spoliating party. A rule requiring some corroborating evidence, however, may be extrapolated. InYoungsaye v. Susset, a medical malpractice case, the treating physician admitted to not ordering certain crucial tests and omitting to follow up with the patient's general practitioner. 972 A.2d 146, 147 (R.I. 2009). This evidence supported the inference — arising out of the doctor's missing notes — that the doctor had noticed the plaintiff's textbook symptoms of the illness which he nonetheless failed to diagnose.Id. In Mead v. Papa Razzi, a premises negligence case, witnesses testified that there was water on the floor. 899 A.2d 437, 440 (R.I. 2006). This evidence supported the inference — arising out of the restaurant's missing incident report — that there was a puddle in which the plaintiff slipped.Id. at 444. In Kurczy v. St. Joseph's VeteransAssociation, another premises negligence case, witnesses testified to the lack of lighting — and cobwebs on the inoperative light fixture — in an open concrete stairwell. 820 A.2d 929, 937-38, 941-42 (R.I. 2003). This evidence supported the inference — arising out of the missing board meeting minutes — that the Veterans Association Board knew of the dangerous condition and reflected unfavorably on its innocence in regard to plaintiff's fall. Id. at 947-47. In Tancrelle v.Friendly's, yet another premises negligence case, three witnesses testified that the stairs the plaintiff fell down appeared rotted and water damaged, and another witness testified that a few months after the plaintiff's fall "the entire set of stairs shifted . . . and the vertical support gave *Page 13 
way." 756 A.2d 744, 746-49 (R.I. 2000). This evidence supported the inference — arising out of the missing staircase — that the staircase was in fact in deplorable condition. Id.
In a slightly different posture, the trial justice's refusal to instruct on spoliation was overturned in Rhode Island Hosp. TrustNat'l Bank v. Eastern Gen. Contractors, Inc.,674 A.2d 1227, 1234 (R.I. 1996). This case is somewhat analogous to the present matter, because the missing evidence concerns a recording of a conversation. Unlike the present matter, however, inHospital Trust there was testimony concerning the content of the recorded conversation. Id. at 1229-30. Even without the adverse inference, there could be sufficient evidence in HospitalTrust to support the insured's claim that the bank unreasonably delayed the processing of the insured's payment. For example, the dates themselves — between the filing of the claim and the decision not to pay it — present an issue of reasonableness.Id. at 1229. Further, the insured testified to a conversation in which the bank reassured it that only minor errors existed in the insured's claim-presentation paperwork — in contrast to the bank's later decision not to pay, which it rationalized by claiming there were fatal defects in that paperwork. Id. at 1230. Thus, the destruction of the tape could bolster the existing evidence of unreasonableness, but the inference that the tape supports plaintiff's claim would not be the only evidence in support of that claim. If Plaintiff here had presented the testimony of some witness who had heard a committee member say something discriminatory regarding the committee interview, the now-missing notes could bolster the inference that discrimination could have occurred. Here, Plaintiff testified to "just a pleasant interview."
Other jurisdictions have addressed the issue currently before this Court. In In re Lollipop, Inc., a New York Federal District Court ruled that although "[i]t is well settled that a court may draw adverse inferences against a party to a civil action when that party [withholds *Page 14 
evidence], Baxter v. Palmigiano,425 U.S. 308, 318, 1976, . . . these inferences should not be sole basis for claims against the party . . . as such claims should otherwise be supported by evidence."205 B.R. 682, 689 (Bankr. E.D. N.Y. 1997) (citing In reEinhorn, 29 B.R. 966, 970 (Bankr. E.D.N.Y. 1983)). Even more germane is the cited case In re Einhorn. There, the court refused to grant summary judgment in the plaintiff's favor because "in Einhorn, the evidence presented was insufficient to sustain a judgment, outside of any inferences drawn from the [withholding of evidence.]" In re Lollipop, Inc.,205 B.R. at 689 (citing In re Einhorn, 29 B.R. at 970). Thus, the court refused to consider the inference, standing alone, as probative evidence. In re Einhorn, 29 B.R. at 970.
In Kronisch v. U.S., the United States Court of Appeals for the Second Circuit recognized the necessity of evidence corroborating an inference arising out of missing evidence:
 "The task is unavoidably imperfect, inasmuch as, in the absence of the destroyed evidence, we can only venture guesses with varying degrees of confidence as to what that missing evidence may have revealed. Nonetheless, before we permit the drawing of an adverse inference, we require some showing indicating that the destroyed evidence would have been relevant to the contested issue." 150 F.3d 112, 127 (2nd Cir. 1998).
The Kronisch Court relied in part on a Federal District Court decision wherein the court refused to draw an adverse inference where the party had "not demonstrated prejudice from the denial of access to the destroyed or lost materials" because the party had"fail[ed] to provide any extrinsic evidence that the subject matter of the lost or destroyed materials would have been unfavorable to [the opposing party] or would have been relevant to the issues in this lawsuit." Skeete v. McKinsey Co.,1993 WL 256659, at *7 (S.D.N.Y.) (emphasis added). "Just how much evidence is enough to support an inference about the content of destroyed evidence cannot be precisely defined, and will necessarily vary from case to case, but we remain mindful of *Page 15 
Wigmore's admonition that `care should be taken' not to require too specific a level of proof." Kronisch, 150 F.3d at 128 (quoting 2 John Henry Wigmore, Evidence in Trials at CommonLaw § 291, at p. 228).
The Second Circuit rule is not an anomaly. It is widely held that a missing-evidence inference alone cannot sustain a verdict. The rule has been stated that "the presumption will not supply a missing link in an adversary's case, and cannot be treated as independent evidence of a fact otherwise unproved."Pier 67, Inc. v. King County, 573 P.2d 2, 9 (Wash. 1977);Baker v. Port City Steel Erectors, Inc.,200 S.E.2d 681, 683 (S.C. 1973); Nat'lLife Acc. Ins. Co. v. Eddings,221 S.W.2d 695, 699 (Tenn. 1949).
Here there is no extrinsic evidence to show information contained in the missing interview notes would have been unfavorable to Defendant.
Plaintiff presents the Court with Byrnie v. Town of CromwellBoard of Education, 243 F.3d 93 (2nd Cir. 2001), arguing that this case stands for the proposition that "direct evidence of age discrimination [is] not required." (Pl.'s Supp'l Mem. in Opp'n to Def.'s Post-Trial Mot. 1) (emphasis in original). Plaintiff's argument that Byrnie stands for the proposition that direct evidence of discriminatory animus is not required overstates the thrust of the case, and misinterprets the Court's long-standing evidentiary requirements. This Court accepts the proposition that direct evidence of liability is not required. All that is required in the civil context is proof by a preponderance of the evidence — direct or circumstantial evidence carrying equal probative force — of the plaintiff's claim. Notably, inCasey v. Town of Portsmouth, our Supreme Court plainly stated the evidentiary requirement for an employment discrimination case in Rhode Island. 861 A.2d 1032 (R.I. 2004). There, our Supreme Court upheld the grant of summary judgment for the defendant, commenting favorably on the motion justice's description *Page 16 
of the evidence plaintiff needed to survive summary judgment as an "extra little piece of circumstantial evidence."861 A.2d at 1038 n. 4 (emphasis added). The Court further noted that "the motion justice in no way required proof of discrimination by direct evidence." Id.
In Byrnie, the Court of Appeals overturned a trial justice's motion for summary judgment, finding that the plaintiff had satisfied his "minimal" burden of showing a prima facie case of age and gender discrimination for failure to hire, and had presented sufficient evidence to rebut the defendant's legitimate reasons for failing to hire. 243 F.3d at 101. Further, the Byrnie Court overturned the lower court's refusal to instruct on spoliation because the Court found sufficient extrinsic evidence — indirect, circumstantial evidence — to bolster the adverse inference drawn from missing interview notes.Id. at 102-06. The Byrnie Court cited Kronisch for the rule that a party seeking a spoliation instruction must show `"a likelihood that the destroyed evidence would have been of the nature alleged by the party affected by its destruction."'243 F.3d at 110 (quoting Kronisch, 150 F.3d at 127-28). The Court noted that the plaintiff "cannot offer direct evidence of an improper discriminatory bias and thus must defeat summary judgment on the strength of his prima facie case combined with circumstantial evidence." 243 F.3d at 102. The Court thus overturned the trial justice's refusal to instruct on spoliation because "there [was] ample [circumstantial] evidence that the documents were relevant to Byrnie's case." 243 F.3d at 109; 109-110 (citing Kronisch,150 F.3d at 127-28). The Byrnie defendant justified its decision not to hire plaintiff by arguing that plaintiff had performed poorly in his interview compared to the hired candidate's. Numerous witnesses were prepared to testify to the interview process, including the hired candidate — who disputed how well her interview actually went. 243 F.3d at 105-06. This testimony, inter alia, [4] supplied the extrinsic evidence required to support the *Page 17 
inference that the interview notes either contained discriminatory animus or directly contradicted defendant's purported reasons not to hire the plaintiff in Byrnie. Here, there is no extrinsic evidence — direct or circumstantial — to support an inference that the missing 1998-1999 interview notes indicated discriminatory animus or pretext.
The need for extrinsic evidence corroborating the inference drawn from spoliated evidence is especially pressing in a case such as this one where burden shifting occurs. McDonnell DouglasCorp. v. Green, 411 U.S. 792 (1973); see Newport Shipyard v.Rhode Island Comm'n for Human Rights. 484 A.2d 893 (R.I. 1984) (adopting McDonnell-Douglas framework in Rhode Island). Plaintiff made his prima facie case, permitting a presumption of discriminatory animus, by (1) he is a member of the protected class, in this case at least forty years old; (2) he applied for an open position; (3) he was not selected; and (4) the employer filled the position by hiring another individual with similar qualifications.Casey, 861 A.2d at 1037. Defendant then adduced some non-discriminatory reasons for the failure to hire Plaintiff: his lack of a major concentration in the subject matter compared to the hired candidates, who were either English majors and/or had more experience in the school system; his teaching style and philosophy; and his master's degree, which would require a higher starting salary. Defendant's rebuttal caused "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, [to] simply drop[] out of the picture." St.Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). The burden thus returned to Plaintiff. "To satisfy this third *Page 18 
prong, a plaintiff must do more than simply cast doubt upon the employer's justification." Nicolae v. Miriam Hosp.,847 A.2d 856, 860 (R.I. 2004) (quotations omitted). After Defendant's rebuttal, Plaintiff bears `"the ultimate burden"' of proof by a fair preponderance of the evidence that age discrimination was nonetheless the true motive for Defendant's action. St. Mary's Honor Ctr., 509 U.S. at 516-17 (quotingTexas Dept. of Cmty. Affairs v. Burdine,450 U.S. 248, 256 (1981); Casey, 861 A.2d at 1037. "`[A] plaintiff's prima facie case, combined with sufficient evidence tofind that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" Casey, 861 A.2d at 1038 (quotingReeves v. Sanderson Plumbing Prod., Inc.,530 U.S. 133, 148 (2000) (en banc)) (emphasis added).
After a thorough review of the evidence, "in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses . . . draw[ing] from the record all reasonable inferences that support the position of the nonmoving party," the Court finds the evidentiary basis legally insufficient for a reasonable jury to find in Plaintiff's favor on the age discrimination claims. Black,934 A.2d at 219 (quoting DeChristofaro, 685 A.2d at 262). The only support for Plaintiff's claim of age discrimination was the inference drawn from the missing notes. The inference, standing alone, is "no[t] [a] legally sufficient evidentiary basis for a reasonable jury to find" discriminatory animus here. Super R. Civ. P. 50(a)(1). Further, permitting the jury to draw an adverse inference from the missing notes where there was no extrinsic evidence to support that inference was an error of law. Without that inference, there is no evidence at all to sustain a verdict. *Page 19 
Retaliation
As to Plaintiff's retaliation claim, the evidence again falls woefully short of meeting the elements of such a claim. The Court has examined the evidence in the light most favorable to the Plaintiff as it relates to Plaintiff's prima facie case, to Defendant's shifting burden of production regarding legitimate, non-discriminatory reasons for failing to hire Plaintiff for substitute teaching positions, and, finally, to Plaintiff's evidence establishing Defendant's proffered reasons were false or pretextual.
Plaintiff's prima facie case for retaliation requires a showing that (1) Plaintiff engaged in protected conduct; (2) he was thereafter subject to an adverse employment action; and (3) the adverse employment action was causally connected to the protected conduct. Evans v. Rhode Island Dep'. of Bus. Regulation,2004 WL 5543466 (R.I. Super.) (citing Che v. MBTA,342 F.3d 31, 38 (1st Cir. 2003)). As in other employment discrimination claims, if Plaintiff establishes a prima facie case of retaliation, then the fact-finder employs the burden shifting test discussed in the previous section. Defendant has the opportunity to present evidence of a legitimate non-discriminatory reason for its actions and Plaintiff may rebut this by showing pretext. Evans, 2004 WL 5543466 (citing Hazel v.United States Postmaster Gen., 7 F.3d 1, 6-7 (1st Cir. 1993)). Again, the burden of persuasion remains with the plaintiff, he must persuade the fact finder that (1) the defendant's proffered justification for its action was pretextual; and (2) the proffered justification was pretext for illegal retaliation. Evans,2004 WL 5543466 (citing St. Mary's Honor Ctr.,509 U.S. at 511, 515-17).
The only testimony elicited on this issue was from Plaintiff. Plaintiff testified that by the spring of 1999, he had tired of substitute teaching, which he likened to "babysitting." He began to look for other opportunities to teach and found several. From 1999 through 2006, Plaintiff *Page 20 
taught business-related English courses at the Sawyer School and the Rhode Island Institute of Technology.
Plaintiff never testified or even implied that he sought substitute teaching assignments with Defendant in 1999 or thereafter. In fact, the evidence indicates Plaintiff's obvious dissatisfaction with substitute teaching and establishes that he had moved in another direction with other educational institutions.
This Court finds that there is no evidence upon which a reasonable jury could conclude that Plaintiff was retaliated against by the Cumberland School Department. Thus, the Court grants Defendant's motion for judgment as a matter of law on the claims of age discrimination and retaliation.
 B NEW TRIAL Standard of Review
The motion for new trial comes before the Court pursuant to Superior Court Rule 59:
 "[A] new trial may be granted to all or any of the parties and on all or part of the issues, (1) an action which there has been a trial by jury for error of law occurring at the trial or for any of the reasons for which the new trials have heretofore been granted."
"The role of a trial justice in considering a motion for a new trial is well-established." Murray v. Bromley,945 A.2d 330, 333 (R.I. 2008). "When ruling on a motion for a new trial, the trial justice acts as a superjuror and should review the evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses." Manning v. Bellafiore, ___ A.2d ___,2010 WL 1438922, *8 (R.I. 2010) (quotations omitted). "In carrying out the function of `superjuror,' the trial justice should adhere to the following principles: *Page 21 
 `The trial justice may accept some or all of the evidence. [He or she] may reject evidence that is impeached or contradicted by other positive testimony or circumstantial evidence. Or [he or she] may disregard testimony that contains inherent improbabilities or contradictions or which is totally at variance with undisputed physical facts or laws. [He or she] may also add to the evidence by drawing proper inferences.'" Id. (quoting Murray, 945 A.2d at 333 (quotations omitted)).
A trial justice may set aside a verdict if he or she finds that "the verdict is against the preponderance of the evidence," (Blue Coast, Inc., v. Suarez Corp. Indus.,870 A.2d 997, 1088 (R.I. 2005) (citing Connor v. Bjorklund,833 A.2d 825, 827 (R.I. 2003)) or the verdict "fails to respond truly to the merits of the controversy and to administer substantial justice," Manning v. Bellafiore, ___ A.2d ___,2010 WL 1438922, *8 (quotations omitted). The trial justice should allow the verdict to stand, however, if he or she determines that the evidence is evenly balanced or is such that reasonable minds could come to different conclusions.Id. (quotations omitted). This is so even if the trial justice entertains some doubts. Marcotte v. Harrison,443 A.2d 1225, 1232 (R.I. 1982).
Our Supreme Court affords "great weight" to the trial justice's ruling on a motion for new trial; and "will affirm a trial justice's decision on a motion for a new trial as long as the trial justice conducts the appropriate analysis, does not overlook or misconceive material evidence, and is not otherwise clearly wrong."Id. (citations omitted).
 Analysis
Age Discrimination
Plaintiff initially appeared to satisfy his burden of showing that he was entitled to a spoliation instruction regarding the missing notes. The Court permitted the introduction of evidence related to the lost notes expecting that further evidence would be adduced at trial to affirmatively show or otherwise corroborate Plaintiff's claim of age discrimination. At trial, *Page 22 
however, the Plaintiff provided no evidence of age discrimination. The only evidence supporting the verdict is the inference that the lost notes demonstrate discriminatory animus.
The test for whether to give a spoliation instruction in Rhode Island is well settled. A jury may properly consider the issue of spoliation where a defendant, (1) has failed to produce a document that was routinely generated in his business; and (2) has not been able to provide a satisfactory explanation as to why the document was not prepared or produced. Youngsayw, 972 A.2d at 149. The unexplained negligent or deliberate absence of relevant evidence may give rise to an adverse inference that the missing or spoliated evidence would have been unfavorable to the position of the party unable to produce it. Id. A showing of bad faith is not required before the jury will be permitted to draw this inference.Id.
The Court incorporates by reference its extensive discussion of law pertaining to the requirement that some extrinsic evidence must be found in the record to support a spoliation inference drawn by the jury. As previously stated, this Court finds no extrinsic evidence that establishes age-related discriminatory animus.
To briefly summarize Plaintiff's case — he was appropriately, and pleasantly, interviewed for the teaching positions; the interview participants asked education-related questions; no one mentioned age or asked age-related questions; the candidates chosen over Plaintiff were ranked higher than Plaintiff; and the candidates hired had degrees in major concentrations of study in the subject matter required for each position, that is, English and/or Social Studies.
The Court is constrained to find that the jury gave an inordinate amount of weight and credence to the missing interview notes from the 1998-1999 interviews. The missing records, when viewed in relation to all of the evidence in the record — and in particular, to the testimony related to the interview process — do not support Plaintiff's age discrimination claim. *Page 23 
Retaliation
Regarding Plaintiff's retaliation claim, the Court must likewise conclude that the record contains insufficient evidence to establish that Plaintiff was denied substitute teaching assignments as a result of filing discrimination claims with the Human Rights Commission.
As stated previously, from 1999 through 2006, Plaintiff sought and obtained teaching positions at two private educational institutions. There is no direct evidence or reasonable inferences that Plaintiff had continued to seek substitute assignments with Defendant after obtaining teaching positions elsewhere. The evidence actually supports a contrary intention: Plaintiff had tired of the "babysitting" aspect of substitute teaching and desired a more meaningful teaching position, which he successfully found outside of the Cumberland school system.
This Court is constrained to find, in the alternative should the Court's entry of judgment as a matter of law be reversed, that Defendant is entitled to a new trial. The jury's verdict is against the fair preponderance of the evidence, fails to administer substantial justice, and fails to truly respond to the merits of the controversy. Defendant's motion for a new trial is granted.
 III CONCLUSION
Defendant's motion for judgment as a matter of law is granted on Plaintiff's age discrimination and retaliation claims. In the alternative, Defendant's motion for a new trial on Plaintiff's age discrimination and retaliation claims is granted.
[1] The highest ranking candidate had worked at the middle school for nine years as a teacher's aide, performed her student teaching there and was well known to staff and students.
[2] The unexplained loss or destruction of these records implicated the spoliation instruction in this matter.
[3] This conclusion is supported by a review of the testimony and the 1998-1999 interview sheets in evidence.
[4] The Court found that the plaintiff had provided enough evidence to present an issue of fact by detailing discrepancies in the hiring process. Id. at 103-06. The Court noted at least five (5) major discrepancies that, combined with other evidence, weighed against summary judgment for defendant: (1) the plaintiff's 21.5 years of experience at the available grade level compared to the hired candidate's 4 years of experience at a different grade level; (2) the Committee's waiver of application procedures in regard to the hired candidate; (3) the Committee's evasive, subjective explanation for choosing the hired candidate, which "on its face, raises credibility problems;" (4) the Committee's incredible suggestion that plaintiff lacked familiarity with the school's teaching philosophy given, generally, plaintiff's 21.5 years of experience, and specifically, his five (5) years of substitute teaching at that particular school on a daily and long-term basis; and (5) the hired candidate's demonstrated familiarity with the school's assessment program compared to plaintiff's unfamiliarity — a familiarity the hired candidate herself disputed.